[No. F004956. Fifth Dist. Aug. 19, 1986.]

In re the Marriage of LAHOMA and CLARENCE K. STEPHENS.
CLARENCE K. STEPHENS, Respondent, v.
LAHOMA STEPHENS, Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, IV, and V.

## COUNSEL

Cardoza, Nickerson, Martelli, Curtis & Arata and Hugh E. Brereton for Appellant.

Brian C. Davis for Respondent.

**OPINION**

**MARTIN, J.**—Clarence K. Stephens (hereinafter Husband) filed a petition for dissolution of marriage on March 30, 1981, in the Superior Court of California, County of Stanislaus. The petition indicated a date of marriage of June 14, 1952, and a date of separation of February 20, 1981.

Lahoma Stephens (hereinafter Wife) filed her response dated March 31, 1981. Said response listed as a community asset, inter alia, Husband's "Retirement benefits from the U.S. Air Force . . . ."

On June 4, 1981, a marriage settlement agreement was filed by the parties, in which they stipulated, among other things, to the following: (1) Husband agreed to pay to Wife as spousal support the sum of $500 per month until Wife remarried;[1] (2) Wife does not own any separate property; (3) Husband does not own any separate property; (4) an agreement regarding Husband's federal pension rights as follows: "At this time, Husband receives Federal Retirement Benefits deriving from his prior employment by Department of the Air Force United States Government.

"At the time of execution of this agreement, husband and wife agree that the United States Supreme Court in re *Marriage of McCarty* [Oct. 16, 1980, cert. granted] is reviewing the issue of military retired pay and states' rights to divide such pay upon dissolution of marriage. Husband and wife agree that the Stanislaus County Superior Court shall retain jurisdiction of the issue of divisibility of such military pay in the event that the United States Supreme Court decides that California Courts may Order a division of such military pay.

"If the United States Supreme Court decides that such military pay may be Ordered divided by a State Court of competent jurisdiction, then husband agrees to execute and deliver all necessary papers and documents to the appropriate veterans retirement agency or department in order to allow wife to share in such payment benefits using the following equation multiplied by husband's monthly entitlement:

---

[1]Wife has since remarried.

```
            [No. of months of husband's military service        ]
            [                                                    ]
"½  ×  [while married to wife ÷ total no. of months             ]
            [                                                    ]
            [of husband's military service                       ]
            [                                                    ]
```

"If wife shall become entitled to receive a portion of husband's military retirement pay as hereinabove set forth, wife agrees to reduce spousal support as set forth hereinabove, or otherwise ordered by an equal amount of such shared military retirement pay.

"If the United States Supreme Court decides that such military retirement pay is not divisible, then wife agrees she shall not be entitled to share in such retir[e]ment pay."

The interlocutory judgment of dissolution of marriage was entered August 17, 1981, and a final judgment was entered on January 13, 1982.

On March 8, 1984, an order to show cause regarding Husband's military pension was filed. An order to show cause hearing was held and the court found the matter should proceed to trial. The matter was submitted after trial and the trial court ultimately denied Wife's request for modification. This appeal followed.

### Facts

Husband entered the military service on February 2, 1947. He married Wife on June 14, 1952. He left the service on June 1, 1967, after completing over 20 years of honorable service. Husband and Wife separated February 20, 1981, after a marriage of 28 years, 8 months.

After 20 years in the service, Husband applied for retirement benefits and initiated the necessary procedure. Wife testified she and Husband made a joint decision for him to seek retirement in that they had been "away from family and friends for many years; hardly ever home; we thought it would be a good time to get out." Husband was subjected to a routine physical and a medical evaluation board made the determination as to the type of retirement Husband would receive.

Husband received a permanent disability rating of 20 percent from the Department of the United States Air Force and retired pursuant to 10 United

States Code[2] section 1201, effective May 31, 1967, after completing 20 years and 16 days of military service. His monthly retirement is based upon 20 years of service. The 20 percent disability affects taxable income and is computed by using the base pay at date of retirement times 20 percent. This figure is then subtracted from the monthly retired pay and the remaining amount is the permanent taxable income as shown below:

| "Base Pay at DOR | 440.40 | 440.40 | | 220.20 | |
|---|---|---|---|---|---|
| "20 Years × 2½% = | × 50% | ×20% | Disability | − 88.08 | |
| | 220.20 | 88.08 | | 132.12 | PTI" |

Husband's current gross monthly pay on his pension was at the time of trial $746.04 which included a permanent taxable income of $447.61. Husband testified he pays income taxes on his disability pay and "as far as he knows" the amount he would receive from a disability pension is the same he would have received with a regular longevity pension based upon 20 years in the service.

Wife's income and expense declaration indicated an income of her present husband as approximately $800 to $1,200 per month gross, $600 to $900 net with expenses of approximately $1,400 per month. Husband filed a financial declaration in 1981 showing an income of $1,830 gross with a net of $1,565 and expenses of $1,068.35. At trial, Wife testified she had been employed for the past few months at a department store on a part-time basis and received minimum wage.

DISCUSSION

I. ARE THE PARTIES BOUND BY THE MCCARTY DECISION?

■ On June 26, 1981, the United States Supreme Court filed its opinion in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], holding federal law precludes a state court from dividing military retired pay pursuant to state community property law. Thus, California community property law was preempted by federal law on this issue.

Congress responded by enacting the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA),[3] an amendment to title 10 which became effective in relevant part on February 1, 1983. The retroactive effect of this act in the context of the disposition of military retirement pensions upon dissolution has been stated to be as follows: "The act overrules *McCarty*

---

[2]All statutory references are to 10 United States Code unless otherwise specified.
[3]Public Law No. 97-252 (Sept. 8, 1982) section 1001, 96 Statutes at Large 730.

stating 'a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.' (10 U.S.C. § 1408(c)(1).) California law treating military retirement pensions as community property is no longer preempted. The act's legislative history clearly indicates Congress' intent to abrogate all applications of the *McCarty* decision (see J. Explanatory Statement of the Com. of Conf. on Pub. L. No. 97-252 from House Conf. Rep. No. 97-749, Aug. 16, 1982, pp. 166-168, 128 Cong. Rec. (1982))." (*In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856].)

This court construed FUSFSPA as indicating Congress' intent that courts divide retirement pensions upon dissolution as though *McCarty* did not exist, stating, "[T]here is no longer any *McCarty* rule to be retroactively applied . . . ." (*In re Marriage of Frederick* (1983) 141 Cal.App.3d 876, 880 [190 Cal.Rptr. 588].) FUSFSPA, by its retroactive application, returned California law regarding division of military retirement pensions upon dissolution to the standard applicable prior to June 26, 1981, to wit: *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 [126 Cal.Rptr. 633, 544 P.2d 561] (nonvested federal retirement benefits) and *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449], disapproved on other grounds in *In re Marriage of Brown, supra,* 15 Cal.3d at page 851 (vested federal retirement benefits). "'[N]o case within our memory has received less retroactive application than *McCarty.* Starting with the last paragraph of the *McCarty* opinion itself, the judicial and legislative branches, state and federal, cooperated in a massive and largely successful drive to make *McCarty* disappear—prospectively, presently and retroactively. . . . The result is that, for most purposes, *McCarty* not only is not the law but never really was.'" (*Brunson* v. *Brunson* (1985) 168 Cal.App.3d 786, 788 [214 Cal.Rptr. 378], quoting *Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421-422 [212 Cal.Rptr. 162, 696 P.2d 656].)

The first question is whether this court will find the parties have bound themselves to a ruling of the United States Supreme Court which for most purposes does not exist.

It appears the parties, by entering into the property settlement agreement, intended to avoid further litigation regarding community property interests, if any, in Husband's military retirement and agreed to be bound by the United States Supreme Court's determination of the issue. However, it also appears from the parties' agreement they did not intend to be bound by a particular decision, such as *McCarty,* but rather to be bound by the state of law as reflected after resolution of the question presented in *McCarty.*

In other words, the parties realized the question of community property interest in the military retirement benefits was in a state of flux and agreed to be bound by the ultimate resolution of that issue. To ignore the passage of FUSFSPA and subsequent decisions of California courts on this issue would be unfair and inequitable.

In the case of *In re Marriage of Fairfull* (1984) 161 Cal.App.3d 532 [207 Cal.Rptr. 523], the court stated: "[I]t is now authoritatively held that the Act's 'legislative history clearly indicates Congress' intent to abrogate all applications of the *McCarty* decision.' (See *In re Marriage of Sarles* (1983) 143 Cal.App.3d 24, 27 . . .; *In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 837 . . .; *In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 . . . .) Thus, such military pension rights as are intended by Congress to be community property, will be divided '"*without regard to the date of any court order.*"' (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 428 . . .); the 'legislative intent [is] that the law relative to community property treatment of military retirement pensions be as though *McCarty* did not exist' (*In re Marriage of Frederick* (1983) 141 Cal.App.3d 876, 879 . . .); '[t]he prior decisions of this state relative to the treatment of military pensions as community property . . . will be controlling on all cases not yet final, whether they were filed before, on or after June 26, 1981.' (*In re Marriage of Hopkins, supra,* 142 Cal.App.3d 350, 360); and, 'such pensions would be subject to division as community property both before and after June 25, 1981' (*In re Marriage of Frederick, supra,* 141 Cal.App.3d at p. 879)." (*In re Marriage of Fairfull, supra,* 161 Cal.App.3d at p. 535.)

Thus, we conclude the parties are bound by the provisions of FUSFSPA and applicable subsequent case law.

II. APPLICABILITY OF CIVIL CODE SECTION 5124*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. DIVISIBILITY OF HUSBAND'S PENSION BENEFITS AS A COMMUNITY PROPERTY ASSET

■ As explained previously, to ameliorate the effects of the *McCarty* decision of the United States Supreme Court, Congress enacted FUSFSPA which provided under section 1408(c)(1): "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a

---

*See footnote on page 616, *ante*.

member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."

Section 1408(a)(4) defines the meaning of the phrase "disposable retired pay" as "the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title) . . . ."

Husband was retired pursuant to section 1201 of chapter 61 of the United States Code. Until amended in 1985, section 1201 provided as follows: "Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty . . . for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also determines that—

"(1) based upon accepted medical principles, the disability is of a permanent nature;

"(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

"(3) either— [¶] (A) *the member has at least 20 years of service computed under section 1208 of this title;* or [¶] (B) the disability is at least 30 percent under the standard schedule of rating disabilities and use by the Veterans' Administration at the time of the determination; and either— [¶] (i) the member has at least eight years of service computed under section 1208 of this title; [¶] (ii) the disability is the proximate result of performing active duty; [¶] (iii) the disability was incurred in line of duty in time of war or national emergency; or [¶] (iv) the disability was incurred in line of duty after September 14, 1978." (Italics added.)

The Department of the Air Force refused to honor Wife's request for a division of Husband's retired pay on the basis Husband was retired under section 1201.

Husband contends Wife has no community property interest in his retirement benefit on the basis the benefit has been classified as disability retirement under chapter 61, section 1201. Wife seeks a division of that

portion of Husband's retirement other than the 20 percent of said benefit which was awarded due to his disability. In other words, since Husband would not have received any disability benefit had he not served a full 20 years in the military prior to retirement and since his disability was rated at 20 percent, Wife seeks ½ of Husband's remaining 80 percent of retirement pay which she claims is due to length of service, excluding that percentage due to Husband's military service prior to marriage.

As is apparent from section 1201, the award and amount of Husband's disability retirement pension depended on his serving in the military for 20 years.

*In re Marriage of Stenquist (Stenquist I)* (1978) 21 Cal.3d 779, 786-787 [148 Cal.Rptr. 9, 589 P.2d 96], held that although generally speaking disability retirement pensions are the separate property of the employee spouse, when the employee spouse was also eligible to receive regular longevity retirement benefits at the time he or she retired for disability, "[i]t would be inconsistent with community property principles 'to permit [the employee] spouse to transmute what would otherwise be community property into his or her separate property.' [Citation.]" (*Id.*, at p. 786, fn. omitted.) The court concluded the purpose of disability benefits is primarily to compensate the disabled veteran for "the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian market." (*Id.*, at p. 787.)

Recent California appellate courts have relied on the reasoning of *Stenquist I* even though it was, in effect, overruled by the decision in *McCarty*. The appellate courts have reasoned FUSFSPA nullified the *McCarty* decision and thus, in effect, resurrected *Stenquist I*. (*In re Marriage of Mastropaolo* (1985) 166 Cal.App.3d 953, 959-960 [213 Cal.Rptr. 26]; see also *In re Marriage of Chambers* (1985) 174 Cal.App.3d 1079, 1082-1083 [220 Cal.Rptr. 882].)

The continued viability of the "purpose analysis" of *Stenquist I* is reflected by the Supreme Court's extensive discussion of that approach in *In re Marriage of Saslow* (1985) 40 Cal.3d 848, 858-859 [221 Cal.Rptr. 546, 710 P.2d 346], a case dealing with division of benefits derived from disability insurance. The high court relied on *Stenquist I* in deciding the disability insurance benefits should be treated as separate property insofar as they are intended to replace postdissolution earnings that would have been the separate property income of the disabled spouse, and treat the benefits as community property insofar as they were intended to provide retirement income. (*Id.*, at pp. 860-861.)

In *Stenquist I,* the court did not permit the serviceman's election of a disability pension to defeat the community interest in his right to a pension based upon longevity.

The case of *In re Marriage of Cullen* (1983) 145 Cal.App.3d 424 [193 Cal.Rptr. 590], certiorari denied 465 U.S. 1102 [80 L.Ed.2d 129, 104 S.Ct. 1599], involved a dissolution of marriage proceeding in which the husband retired with 100 percent disability after serving 19 years and over 8 months active duty. The Fourth District Court of Appeal relied upon the rule in *Stenquist I* where the husband's right to retire had vested by his service of more than 19½ years and where the husband chose to waive his retirement pay and receive disability pay only after he began receiving retirement pay. The court rejected husband's argument Congress, in enacting FUSFSPA, did not accord the state's power to apply state community property laws to military disability pay as was done in *Stenquist I* and any attempt to do so is void as an unconstitutional infringement upon the powers of Congress protected by the supremacy clause of the United States Constitution, article VI, clause 2. (*Id.,* at p. 428.) The court stated: "This argument relies upon the Act's failure to address whether disability retirement pay may or may not be treated by state courts as property of the member and his or her spouse. This omission is read to prohibit the State of California from treating disability retirement pay as community property. *Nothing in the Act nor in case law warrants a conclusion that Congress merely by failing to include disability pay in the definition of 'disposable retired or retainer pay' intended to deprive the state courts of jurisdiction to determine the individual or community character of disability retirement pay in family law proceedings.* The correct standard for review under the supremacy clause was stated by the United States Supreme Court recently in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, at page 581 . . .: 'On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be preempted. [Citation.]' *Hisquierdo* also said: '[S]tate interests "should be overridden by the federal courts only where clear and substantial interests of the National Government, which *cannot* be served consistently with respect for such state interests, will suffer major damage if the state law is applied,"' (*id.,* at p. 595 . . .)." (*Id.,* at pp. 428-429.)

The Fourth District Court of Appeal, Division Two, in an opinion by Justice Kaufman, relied heavily on the reasoning of *Cullen* in the case of *In re Marriage of Mastropaolo, supra,* 166 Cal.App.3d 953. In that case the parties were married more than 19 years. Three months after separation, husband retired from the Air Force as 100 percent disabled pursuant to chapter 61, title 10, United States Code sections 1210 and 1201. At the

time of his retirement husband had served more than 20 years, was eligible for longevity retirement and could have elected to receive longevity retirement benefits rather than disability retirement benefits. However, husband elected the disability retirement benefits in that they exceeded the longevity retirement by approximately $200 per month. The appellate court affirmed the trial court's determination that the portion of the retirement benefits husband could have received as longevity retirement pay was community property except for the part attributable to the period before marriage. The court treated the excess due to the disability retirement as additional compensation attributable to the husband's disability. The court held the wife's rights were vested where the retirement occurred before the dissolution of the marriage and at a time when the military spouse was eligible for both longevity and disability retirement and could have elected to receive longevity retirement benefits on the theory FUSFSPA provides "no positive indication of congressional intent to preempt the basic state policy preventing a marital partner from depriving the other spouse of a vested community property right by unilateral decision based upon the well-recognized rule that disability payments are the separate property of the spouse." (*Id.,* at pp. 961-962.)

The court rejected any argument that preemptive federal law permits a military spouse to destroy the other spouse's right to a community property share of the longevity retirement pension by simply accepting a disability retirement and opting not to elect a longevity retirement. (*Id.,* at pp. 962-963.)[4]

Husband in the instant case distinguishes the foregoing cases on the basis they involve an election by the serviceman to receive disability pension rather than retirement benefits thereby attempting to defeat the spouse's community property interest. Husband reasons, unlike these cases, he applied for military retirement prior to the separation of the parties and there is no evidence to suggest Husband elected disability benefits over longevity retirement benefits nor attempted to transmute community property into separate property. However, we note there is also no evidence to suggest Husband did not elect disability benefits over longevity retirement benefits.

Husband relies on the case of *In re Marriage of Costo* (1984) 156 Cal.App.3d 781 [203 Cal.Rptr. 85]. *Costo* involved a serviceman who retired from the United States Air Force after 23 years of service, 7 years prior to his separation from his spouse. His spouse was awarded a community

---

[4]Division One of the Fourth District recently reiterated this reasoning in *In re Marriage of Stier* (1986) 178 Cal.App.3d 42, 50-51 [223 Cal.Rptr. 599]. However, that case was actually decided upon the premise the division of property rights was reduced to a judgment final prior to February 1, 1983, the effective date of FUSFSPA.

property interest in husband's gross retirement pay as it was paid to him. However, over the course of several years husband began suffering severe medical problems which worsened and eventually necessitated surgery. He became disabled and unable to work as a result of his medical problems. Upon application to the Veteran's Administration (VA) for disability benefits, husband was awarded a service-connected disability and approved a disability retirement of 50 percent. As section 1408(a)(4)(B) provides a former serviceman waive a portion of his military retirement in an amount equal to the disability benefit, husband's total monthly entitlement remained the same although a portion of it was attributed to the Air Force's military retirement system and a portion of it was attributed to the VA.

The former Mrs. Costo asserted her entitlement to the disability payments received by Costo relying on the *Stenquist I* decision. (*Id.*, at p. 784.) The Third District Court of Appeal held: "It is clear that Congress granted to the states the limited right to divide 'disposable retired pay.' Section (a)(4) of the act removes any ambiguity as to the meaning 'disposable' by expressly defining what the state courts may divide. That section provides: '"Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title) *less* amounts which— [¶] (A) are owed by that member to the United States; [¶] (B) are required by law to be and are deducted from the retired or retainer pay of such member, including fines and forfeitures ordered by courts-martial, Federal employment taxes, *and amounts waived in order to receive compensation under* title 5 or *title 38.*' (Italics added.)

"There is no ambiguity in the statute. Congress clearly intended to and did exclude from division by the state courts those '*amounts waived in order to receive compensation under . . . title 38.*'" (*Id.*, at p. 786, fn. omitted.)[5]

On the basis Costo was granted disability benefits under title 38 and was required to waive a like portion of his military retirement pay in order to receive those benefits, the court held the amount of the disability benefits must be subtracted from the total retirement pay before the state could divide the remaining "disposable retirement pay." The *Costo* court further stated: "It is a matter for the legislative branch to determine whether military disability payment is to be divided by the states. It is not for the courts to decide that such payment is community property because it is deferred

---

[5]Chapter 11 of title 38, section 301 et seq. provides for compensation for a disability contracted in the line of duty or for an aggravation of a preexisting injury that becomes apparent after separation from the military service.

compensation or that it is separate property because it is compensation for personal pain and suffering. If it is the latter, there is less reason to award an ex-spouse a portion that continues to be paid even following a subsequent remarriage by the nonservice spouse. Congress has used words leaving no room for court-found ambiguity. Disability pay is to be excluded from division by the states['] courts." (*Id.*, at pp. 787-788, fn. omitted.)

The reasoning of the court in *Cullen* and the dicta to the same effect in *In re Marriage of Stenquist (Stenquist II)* (1983) 145 Cal.App.3d 430 [193 Cal.Rptr. 587], certiorari denied 465 U.S. 1101, were criticized in *Costo*. (*In re Marriage of Costo, supra,* 156 Cal.App.3d at pp. 787-788, including fn. 11.) However, *In re Marriage of Mastropaolo, supra,* 166 Cal.App.3d 953, at page 962, dispenses with *Costo*'s criticisms on the basis *Costo* was a case in which the military spouse was granted disability benefits under title 38 and section 1408(a)(4) expressly provides that amounts waived in order to receive compensation under title 38 are excluded from division by the court upon dissolution of marriage. *Mastropaolo* concludes the *Costo* criticism of *Cullen* and *Stenquist II* was, therefore, dicta.

In the instant case, Husband was retired pursuant to section 1201 of chapter 61 of the United States Code. In *Costo,* the veteran was granted postretirement disability benefits under title 38 and section 1408(a)(4). Thus, it seems *Costo* is clearly distinguishable for the reasons enunciated in *Mastropaolo* and cannot control here. We have previously concluded in *In re Marriage of Frederick, supra,* 141 Cal.App.3d 876 that FUSFSPA did not merely undermine, but abrogated, the *McCarty* decision (*id.,* at p. 880) and, in so doing, have adopted the *Cullen* approach that Congress intended to return the states to pre-*McCarty* law, i.e., to the *Stenquist I* rationale. Such reasoning is supported by Congress' express intent to remove the effect of *McCarty* by permitting state courts to apply their marital property laws to military retired pay when fixing the parties' property rights in a divorce. In reviewing its version of FUSFSPA, section 1814, the Senate stated: "The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in *McCarty* v. *McCarty,* 453 U.S. 210 (1981). The bill would accomplish this objective by permitting Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment or legal separation." (Sen. Rep. No. 97-502, 2d Sess., p. 1 (1982); 1982 U.S. Code Cong. & Admin. News, p. 1596.)

A conference committee reporting on House amendments to FUSFSPA stated: "The House amendment would permit disposable military retired pay to be considered as property in divorce settlements under specified

conditions. This provision in the House amendment would have the effect of reversing the decision of the United States [S]upreme [C]ourt in the case of *McCarty* v. *McCarty,* 453 U.S. 210 (1981), which held that a court could not order a division of nondisability retired pay as part of a distribution of community property incident to a divorce proceeding." (H.R. Rep. No. 749, 97th Cong.; 1982 U.S. Code Cong. & Admin. News, p. 1570.)

As the Fourth District Court of Appeal stated in *In re Marriage of Stier, supra,* 178 Cal.App.3d at page 52: "This history reveals a clear congressional intent to reinvigorate state marital property laws and to reestablish an uninterrupted continuum in the development of these laws such that pre- and post-*McCarty* property divisions are decided on the same principles."

Consistent with an express intent to erase *McCarty*'s impact on all cases, FUSFSPA's provisions were made retroactive to the day before the *McCarty* decision was filed. (*In re Marriage of Sarles* (1983) 143 Cal.App.3d 24, 26-29 [191 Cal.Rptr. 514].)

Thus, applying the rationale of *Stenquist I* and *Cullen,* we conclude Wife is entitled to one-half of Husband's military pension attributable to longevity of service, i.e., one-half of 75 percent of Husband's total military retirement benefits excluding the 20 percent disability benefit. Wife conceded nonentitlement to that portion of Husband's pension directly attributable to Husband's service-connected disability; the remaining 25 percent is attributable to military service prior to marriage and is Husband's separate property.

IV., V.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment of the lower court is reversed. The matter is remanded to the trial court for further proceedings in accordance with the views expressed herein, and to determine an appropriate award, if any, to Wife of attorney fees plus costs. Wife is awarded costs on this appeal.

Franson, Acting P. J., and Ballantyne, J., concurred.

---

*See footnote on page 616, *ante.*