357 S.E.2d 226

**Robert H. BUTCHER**

v.

**Opal I. BUTCHER**

No. 16705.

Supreme Court of Appeals of
West Virginia.

April 2, 1987.
Petition for Rehearing April 17, 1987.
Rehearing Denied June 3, 1987.

R. Mike Mullens, Elkins, for appellant.
John E. Busch, Elkins, for appellee.

MILLER, Justice:

The primary issue presented in this appeal is whether military nondisability retirement benefits can be considered for alimony and child support purposes and as marital property subject to equitable distri-

bution in a divorce proceeding. A secondary issue involves whether the circuit court abused its discretion in awarding only temporary rehabilitative alimony. The circuit court concluded that military retirement benefits were exempt, and we find this to be error. The circuit court also erred in awarding only temporary rehabilitative alimony.

The procedural history of the case can be briefly summarized. On June 22, 1984, Robert H. Butcher filed a complaint in the Circuit Court of Randolph County seeking a divorce from Opal I. Butcher. The trial court granted a divorce on the grounds of irreconcilable differences in October, 1984. The parties were able to agree upon custody and child support and the division of the real and personal property accumulated during the marriage. They were unable to reach an agreement concerning an award of permanent alimony and the wife's entitlement to a portion of the husband's military pension benefits. These two issues were then presented for resolution to the circuit court.

The parties were married on May 4, 1954, and lived together as husband and wife until they separated on or about June 1, 1984. On November 4, 1953, six months prior to the marriage, the husband enlisted in the United States Air Force. He made a career of the military service and, upon his retirement with approximately twenty-eight years of service credit, he and his wife returned to their hometown of Elkins, West Virginia.

During their thirty years of marriage, the parties had three children, two of whom were adults at the time of the divorce. Mrs. Butcher had a high school education and had been primarily a housewife and mother. She was fifty years of age, had no vocational skills, and was employed part-time at a local motel as a cleaning lady. She also testified that during the early years of their marriage, her husband

had not wanted her to work. After he retired from the Air Force, he also did not want her to work because the additional income would put them in a higher income tax bracket. She claimed entitlement to one-half of her husband's military pension benefits.

After the hearing, the trial court entered an order that confirmed the agreement of the parties, but denied the wife's claim for one-half of the military pension benefits as alimony and awarded temporary rehabilitative alimony at $300 a month for six months.

We granted the wife's appeal and, while it was pending, the trial court judge decided to reconsider his prior ruling and the parties filed a stipulation of facts. The husband stipulated that he receives military pension benefits of $1,262 per month and earns $800 per month from his present employment as a beer truck driver. He also stated that he did not complete high school. Mrs. Butcher stipulated that she earned approximately $200 per month.

By order entered in April, 1986, the trial court judge again ruled that the husband's military pension benefits were not subject to equitable distribution. The judge concluded that military retirement benefits payable to the husband were not pension benefits, but rather constituted a continuing salary payable for services rendered or to be furnished by the husband as a member of the air force reserve, including possible active duty.[1]

I.

### RIGHT TO MILITARY PENSION BENEFITS

The law concerning whether military pensions are subject to state community property laws or equitable distribution statutes has undergone several changes in the last few years. In *McCarty v. McCarty*,

---

1. The trial judge went on to decide that if this Court determined the wife was entitled to equitable distribution of the military retirement benefits, she would only be entitled to share the retirement income attributable to the husband's career advancement during the marriage, i.e., rank E–4 to rank E–9. After making a series of calculations which are not included in the order, the trial court judge held that the wife would be entitled to $216.54 per month in pension benefits.

453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that the federal military retirement statutes precluded states from dividing military retirement pay pursuant to state community property laws under the doctrine of federal preemption.[2]

In the wake of *McCarty*, Congress responded and enacted the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA), which is codified in 10 U.S.C. § 1408 (1984), and became effective on February 1, 1983.[3] The pertinent section of the legislation, 10 U.S.C. § 1408(c)(1) (1984),[4] brings military retirement benefits within the jurisdiction of a state court to be treated as an asset if state law so authorizes as the North Dakota Supreme Court acknowledged in *Bullock v. Bullock*, 354 N.W.2d 904, 907–08 (N.D.1984):

> "Congress' intent in enacting subsection (c)(1) was to reverse the effect of the *McCarty* decision. H.R.Conf.Rep. No. 97–749, 97th Cong., 2d Sess. 165 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad. News 1569, 1570.
>
> " 'The purpose of this provision is to place the courts in the same position

that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981.' S.Rep. No. 97–502, 97th Cong., 2d Sess. 16 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 1596, 1611."

■ As a result of the 1984 amendments to our domestic relations law, it is quite clear that our legislature was aware of the provisions of the FUSFSPA as specific reference is made to it in several of our Code sections. W.Va.Code, 48–2–15(j) (1984), indicates that military retirement pay can be

---

**2.** Although *McCarty* involved only state community property laws, the United States Supreme Court essentially resolved the equitable distribution issue by vacating a Montana Supreme Court decision, which had divided military pension benefits under an equitable distribution statute, and remanding for further consideration in light of *McCarty*. *See In re Miller*, 187 Mont. 286, 609 P.2d 1185 (1980), *vacated and remanded sub nom., Miller v. Miller*, 435 U.S. 918, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981). Thereafter, state courts agreed that the *McCarty* analysis was equally applicable to equitable distribution jurisdictions. *E.g., Hill v. Hill*, 291 Md. 615, 436 A.2d 67 (1981); *Pruitt v. Pruitt*, 622 S.W.2d 767 (Mo.App.1981); *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982); *Rust v. Rust*, 321 N.W.2d 504 (N.D.1982); *Carter v. Carter*, 277 S.C. 277, 286 S.E.2d 139 (1982).

**3.** It was amended in 1984, but none of these amendments relate to the issues involved in this case. We will cite the date of the FUSFSPA as 1984.

**4.** 10 U.S.C. § 1408(c)(1) (1984), provides: "Subject to the limitations of this section, a [state]

court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." This subject has received considerable attention from commentators. *E.g.,* Horkovich, *Uniformed Services Former Spouses' Protection Act: Congress' Answer to McCarty v. McCarty Goes Beyond The Fundamental Question,* 23 A.F. L.Rev. 287 (1982–83); Raggio & Raggio, *McCarty v. McCarty: The Moving Target of Federal Pre-Emption Threatening All Non-Employee Spouses,* 13 St. Mary's L.J. 505 (1982); Note, *McCarty v. McCarty: The Battle Over Military Nondisability Retirement Benefits,* 34 Baylor L.Rev. 335 (1982); Note, *Military Retirement Pay Not Subject to Division As Community Property Upon Divorce: McCarty v. McCarty,* 19 Hous.L.Rev. 591 (1982); Note, *Divisibility of Military Nondisability Retirement Pension Benefits Upon Marriage Dissolution: McCarty v. McCarty, The Uniformed Services Former Spouses' Protection Act, and Beyond,* 22 J. Fam. L. 333, 348 (1984); Note, *Military Retired Pay and Divorce: Congress Retires McCarty v. McCarty—Is that Enough?,* 40 Wash. & Lee L.Rev. 271 (1983).

utilized for alimony and child support.[5] In our equitable distribution statute, W.Va. Code, 48–2–32 (1984), which deals with the allocation of marital property and recognizes homemaker services, subsection (j) indicates that military retirement pay is available to be considered as a marital asset.[6]

Even in jurisdictions where there is no specific reference to the FUSFSPA in the state's domestic relations statutes, courts have found military retirement benefits to be property subject to equitable distribution, alimony, and child support. *E.g., In re Marriage of Campise*, 115 Ill.App.3d 610, 71 Ill.Dec. 454, 450 N.E.2d 1333 (1983); *Jones v. Jones,* 680 S.W.2d 921 (Ky.1984); *Anderson v. Anderson*, 13 Ohio App.3d 194, 468 N.E.2d 784 (1984); *Sawyer v. Sawyer,* 1 Va.App. 75, 335 S.E.2d 277 (1985).

We reached a related result in *Raley v. Raley*, 175 W.Va. 694, 338 S.E.2d 171 (1985), where we decided in the absence of any specific statute that an employee's stock investment or thrift account which was held by his employer was subject to equitable distribution under *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983). This decision was made prior to the extensive 1984 amendments to W.Va.Code, 48–2–1, *et seq.*, which created a broad statutory right to equitable distribution of marital property.[7]

Certainly, there is nothing in the expansive definition of marital property in W.Va. Code, 48–2–1 (1984),[8] which includes "[a]ll

---

**5.** W.Va.Code, 48–2–15(j) (1984), provides:

"Whenever under the terms of this section or section thirteen [§ 48–2–13] of this article a court enters an order requiring the payment of alimony or child support, if the court anticipates the payment of such alimony or child support or any portion thereof to be paid out of 'disposable retired or retainer pay' as that term is defined in 10 U.S.C. Sec. 1408, relating to members or former members of the uniformed services of the United States, the court shall specifically provide for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of the payor party to the payee party."

**6.** W.Va.Code, 48–2–32(j) (1984), provides:

"Whenever under the terms of this article a court enters an order requiring a division of property, if the court anticipates the division of property will be effected by requiring sums to be paid out of 'disposable retired or retainer pay' as that term is defined in 10 U.S.C. § 1408, relating to members or former members of the uniformed services of the United States, the court shall specifically provide for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of the payor party to the payee party."

**7.** Congress has also enacted major legislation governing private pension plans in recent years. The Retirement Equity Act (REA) of 1984 amended several provisions of the Employee Retirement Income Security Act (ERISA) of 1974, as well as the Internal Revenue Code, to permit payment to the divorced spouse directly from the retirement plan. ERISA now provides that "[e]ach pension plan shall provide for the payment of benefits in accordance with the ap-

plicable requirements of any qualified domestic relations order." 29 U.S.C.A. § 1056(d)(3)(A)(1). A "qualified domestic relations order," (QDRO), is one "which creates or recognizes the existence of an alternate payee's right to ... receive all or a portion of the benefits payable ... under a plan." 29 U.S.C.A. § 1056(d)(3)(B)(i)(I). *See also* 26 U.S.C.A. § 414(p). Similar revisions have been made for public pension plans under the Civil Service Retirement Spouse Equity Act, 5 U.S.C.A. § 8331, *et seq.* (1985). *See generally* Troyan, *Drafting and Qualifying a Court Order in a Domestic Relations Case,* 20 Family L.Q. 1 (1986); Note, *The Retirement Equity Act of 1984: One Step Forward, Two Steps Back*, 37 Ala.L.Rev. 163 (1985).

**8.** W.Va.Code, 48–2–1(e)(1) and (2), provide:

" 'Marital property' means:

"(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section.

"(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against sep-

property and earnings acquired by either spouse during a marriage," to suggest that military retirement benefits are excluded. The specific reference to 10 U.S.C. § 1408 in the equitable distribution section, W.Va. Code, 48–2–32(j), fortifies our belief that such benefits are included. We conclude that military nondisability retirement benefits as set out in 10 U.S.C. § 1408 are subject to alimony and child support payments under W.Va.Code, 48–2–15(j) (1984), and are marital property subject to division under our equitable distribution statute. W.Va.Code, 48–2–32(j) (1984).

This conclusion is in line with the majority of courts which now hold that military retirement benefits are marital property and are subject to equitable distribution as well as alimony and child support obligations. *E.g., Chase v. Chase,* 662 P.2d 944 (Alaska 1983); *Edsall v. Superior Court,* 143 Ariz. 240, 693 P.2d 895 (1984) (In Banc); *In Re Marriage of Sarles,* 143 Cal.App.3d 24, 191 Cal.Rptr. 514 (1983); *Le Vine v. Spickelmier,* 109 Idaho 341, 707 P.2d 452 (1985); *In Re Marriage of Korper,* 131 Ill.App.3d 753, 86 Ill.Dec. 766, 475 N.E.2d 1333 (1985); *Jones v. Jones,* 680 S.W.2d 921 (Ky.1984); *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.App.1984); *Coates v. Coates,* 650 S.W.2d 307 (Mo.App. 1983); *In Re Marriage of Waters,* 724 P.2d 726 (Mont.1986); *Ray v. Ray,* 222 Neb. 324, 383 N.W.2d 752 (1986); *Delorey v. Delorey,* 357 N.W.2d 488 (N.D.1984); *Teeter v. Teeter,* 18 Ohio St.3d 76, 479 N.E.2d 890 (1985); *Matter of Marriage of Wood,* 66 Or.App. 941, 676 P.2d 338 (1984); *Major v. Major,* 359 Pa.Super. 344, 518 A.2d 1267 (1986); *Sawyer v. Sawyer,* 1 Va.App. 75, 335 S.E.2d 277 (1985); *In Re Marriage of Mac-*

*Donald,* 104 Wash.2d 745, 709 P.2d 1196 (1985) (En Banc).

The trial judge's conclusion that the husband's military retirement benefits in this case were not pension benefits, but rather represented compensation or income for inactive duty status or possible recall to active duty misreads not only 10 U.S.C. § 1408, but our own statutes which make the benefits available.

II.

## CALCULATION OF AMOUNT TO BE AWARDED

### A.

The question of how much of the retirement benefits are available for equitable distribution, alimony, and child support is not totally answered within the context of the FUSFSPA and appears to be a matter that has received little attention by either courts or commentators.

The initial question arises as to whether, when considering the value of a retirement pension as property under Section 1408(c)(1)[9] as an equitable distribution claim, a state court is limited to the "disposable retired or retainer pay," as this phrase is defined in Section 1408(a)(4), which is essentially a net pay amount. This issue is not raised and we do not address it.[10]

Another issue arising under the FUSFS-PA is whether the provisions of Section 1408(e)(1), stating that "[t]he total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay," forms a substantive limitation on a state court's ability to award more than 50 percent of the dis-

---

arate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage."

**9.** For the relevant text of 10 U.S.C. § 1408(c)(1), *see* note 4, *supra*.

**10.** The California Supreme Court in *Casas v. Thompson,* 42 Cal.3d 131, 228 Cal.Rptr. 33, 720 P.2d 921, *cert denied,* 479 U.S. 1012, 107 S.Ct. 659, 93 L.Ed.2d 713 (1986), concluded under its community property law that for the purposes

of valuation, the gross value of the pension should be used. Courts in Texas appear to be divided on the issue. *Grier v. Grier,* 713 S.W.2d 213 (Tex.App.1986) (net pay); *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982) (approving gross without discussion). In *Campbell v. Campbell,* 474 So.2d 1339 (La.App.1985), after a lengthy discussion of the interrelationship of veterans' disability retirement benefits and regular military retirement benefits, the court found the disability benefits to be marital property and awarded a percentage of the gross payments.

posable pension for purposes of equitable distribution, alimony, and child support.

Only the Minnesota Court of Appeals appears to have addressed this issue in *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.App.1984). It came to the conclusion that the 50 percent limitation in Section 1408(e)(1) must be read in light of its reference to Section 1408(d). This latter subsection relates to how a court order awarding equitable distribution, alimony, or child support may be enforced directly against the disbursing agency which pays the retired service person.[11]

This is done by serving a copy of the divorce order on the Secretary of Defense, who is then authorized to pay the recipient of the award directly.[12] The Minnesota court in *Deliduka* concluded that Section 1408(d) was an enforcement provision and that the reference to it in Section 1408(e) meant only that the 50 percent limitation

applied to instances where direct enforcement of the order was sought against the Secretary:

"The act is new and the United States Supreme Court has not definitively interpreted its provisions. A fair reading shows that the act grants states the authority to treat *all* disposable retired pay as marital property, but limits *direct governmental payments* to former spouses to 50 percent of disposable retired pay (65 percent for multiple courts orders). That means that a state court wishing to award a former spouse more than 50 percent of disposable retired pay must order direct government payments *and* payments by the member of the military to the spouse." 347 N.W.2d at 55 (Emphasis in original; footnotes omitted).[13]

### B.

Independent of the foregoing considerations, there is, however, a difference in

---

11. Section 1408(d)(1), in relevant part, provides:

   "After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired or retainer pay from a member to the spouse or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired or retainer pay of the member to the spouse or former spouse in an amount sufficient to satisfy the amount of child support and alimony set forth in the court order and, with respect to a division of property, in the amount of disposable retired or retainer pay specifically provided for in the court order."

12. It appears that under 10 U.S.C. § 1408(d)(2), in order to obtain a direct payment for benefits that are divided as marital property, the parties must have been married at least ten years while the service member was in the armed forces. This ten-year requirement does not apply to court-ordered child support or alimony payments. Even in the case of court-ordered marital property awards through equitable distribution, courts have held that even though direct payment through the Secretary of Defense cannot be obtained because of the ten-year rule, the spouse's share of the member's pension can still be awarded by a state court at the time of the divorce. *Pacheco v. Quintana,* 105 N.M. 139, 730 P.2d 1 (App.1985); *Matter of Marriage of Wood,* 66 Or.App. 941, 676 P.2d 338 (1984); *Oxelgren v. Oxelgren,* 670 S.W.2d 411 (Tex.App. 1984); *Konzen v. Konzen,* 103 Wash.2d 470, 693

P.2d 97, *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). The Secretary of Defense has promulgated uniform regulations to implement the FUSFSPA, which are contained in 32 C.F.R. Part 63 (1986). These regulations contain the addresses and phone numbers of the designated agents of the Secretary of Defense, upon whom service is to be made to receive payments directly from the government.

13. This quotation from *Deliduka* concludes with note 4 that cites 10 U.S.C. § 1408(e)(6) which the court indicated authorized more than a 50 percent distribution:

   "§ 1408(e)(6) provides:
   "Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired or retainer pay under this section have been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid and under section 459 of the Social Security Act (42 U.S.C. 659) in any case in which the maximum amount permitted under subparagraph (B) of paragraph (4) has been paid." 347 N.W.2d at 55.
   The issue of the enforceability of the circuit court's award against the government is not before us in this case.

determining the amount of military retirement pay that can be received under our law, depending on whether the claim is one for equitable distribution or for alimony or child support. This difference arises from the different sources of the two claims.

We explained the theoretical distinction between a claim for equitable distribution on the one hand and alimony or child support on the other hand in *LaRue v. LaRue,* 172 W.Va. 158, 162, 304 S.E.2d 312, 316 (1983), and in regard to equitable distribution stated:

> "The basis for such a claim was that the spouse seeking an interest in the property had made a substantial economic contribution toward the acquisition of the property. Consequently, under the principles of unjust enrichment, it would be unfair to permit the spouse with title or possession to keep the entire interest."

This analysis from *LaRue* has subsequently been statutorily altered by the presumption of an equitable distribution of marital property under W.Va.Code, 48–2–32(a) (1984).

Alimony and child support obligations, in contrast, arise from the traditional view of the marital relationship, as we stated in *LaRue,* 172 W.Va. at 169, 304 S.E.2d at 322, *quoting, State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 904, 105 S.E.2d 569, 574 (1958):

> " 'Though the power of courts of equity to award alimony is derived from statute it did not originate in any statute but stems from the legal obligation of the husband, incident to the marriage state, to maintain his wife in a manner suited to his means and social position....' "

■ Where an equitable distribution claim is made on a military retirement pension, courts have utilized their general law on equitable distribution of property, and

have also applied what may be termed the "coverture factor" to determine the nonmilitary spouse's share. This factor is applied once the initial marital share is determined and consists of the ratio of the number of years the parties have been married while the service person has been in the military to the total number of years of military service. *E.g., Chase v. Chase,* 662 P.2d 944 (Alaska 1983); *Stephens v. Stephens,* 184 Cal.App.3d 616, 229 Cal.Rptr. 238 (1986); *Spratling v. Spratling,* 720 S.W.2d 936 (Ky.App.1986); *Coates v. Coates,* 650 S.W.2d 307 (Mo.App.1983); *Lewis v. Lewis,* 83 N.C.App. 438, 350 S.E.2d 587 (1986); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984).

We believe that our equitable distribution statute authorizes a coverture factor because our definition of "marital property," found in W.Va.Code, 48–2–1(e)(1), includes "all property and earnings acquired by either spouse *during a marriage.* " [14] (Emphasis added). This language contemplates that it is property or earnings accrued during the marriage which form the basis for marital property. Contributions made to a retirement program by a spouse before the marriage do not represent earnings or property that accumulated during coverture. The reason a pension contribution made during the marriage becomes marital property is explained in *Flynn v. Flynn,* 341 Pa.Super. 76, 83, 491 A.2d 156, 160 (1985):

> "Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property. This determination is made without regard to the possibly contingent nature of the pension, whether or not it has vested or matured." [15]

---

**14.** For the fuller definition of marital property, *see* note 8, *supra.*

**15.** We recognize that here we are dealing with a vested pension benefit, but we acknowledge, as have a majority of courts, that there can be equitable distribution made of nonvested pension benefits. *E.g., In Re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *Robert C.S. v. Barbara J.S.,* 434 A.2d 383

(Del.Supr.1981); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981); *Hagerman v. Hagerman,* 682 S.W.2d 28 (Mo.App.1984); *Flynn v. Flynn,* 341 Pa.Super. 76, 491 A.2d 156 (1985); *Cohen v. Cohen,* 104 A.D.2d 841, 480 N.Y.S.2d 358 (1984). This is specifically recognized as to unvested military pensions. *In Re Marriage of Korper,* 131 Ill.App.3d 753, 86 Ill.Dec. 766, 475 N.E.2d 1333 (1985); *Poe v. Poe,* 711 S.W.2d 849

In the present case, we have a pension of $1,262 per month.[16] Under the equitable distribution statute, W.Va.Code, 48–2–32(a), Mrs. Butcher would be entitled to 50 percent of this amount as her property or $631 per month less the marital coverture formula. In this case, the parties were married for 27.5 years of the total 28 years that her husband was in the service, yielding the ratio 27.5/28 or 49 percent of the total pension, i.e., 49% × $1,262 = $619.73.[17]

In addition to being available as a marital distribution asset, the military pension, if it is being paid out, is also available as alimony and child support under W.Va.Code, 48–2–15(j), as we have previously pointed out.

It should be noted that most jurisdictions in which equitable distribution of assets is available require that before an award of alimony or child support is made, a court should first determine the amount of marital assets and the division thereof between the parties. The reason for this rule is that in the division of marital property a spouse may receive income-producing property and this will have some bearing on the need for alimony or child support. *See, e.g., Bussell v. Bussell,* 623 P.2d 1221 (Alaska 1981); *Baum v. Baum,* 120 Ariz. 140, 584 P.2d 604 (App.1978); *In Re Marriage of Jones,* 627 P.2d 248 (Colo. 1981); *Marriage of Leon,* 80 Ill.App.3d 383, 35 Ill.Dec. 717, 399 N.E.2d 1006 (1980); *Spicer v. Spicer,* 585 S.W.2d 126 (Mo.App. 1979); *In Re Marriage of Johnsrud,* 181 Mont. 544, 572 P.2d 902 (1977); *In Re Marriage of Manners,* 68 Or.App. 896, 683 P.2d 134 (1984); Annot., 41 A.L.R. 4th 48, § 14 (1985).

This rule is compatible with our statute regarding factors to be considered in awarding alimony, maintenance, and child support, W.Va.Code, 48–2–16(b) (1984), which lists sixteen items among which is subsection (b)(5):

"The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance."

Because the lower court erroneously concluded that Mrs. Butcher was not entitled to obtain a portion of her husband's military pension as marital property, this case must be reversed.

## III.

### REHABILITATIVE ALIMONY

We also believe the trial court erred in awarding only temporary rehabilitative alimony. In *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984), we discussed the concept of rehabilitative alimony at some length and made this general statement as to its purpose in Syllabus Point 1:

"The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained."

We found in *Molnar* that the trial court had abused its discretion in awarding seven years of rehabilitative alimony to a fifty-three-year-old woman with limited employment skills after a twenty-five year marriage. At the time of the divorce, she had monthly earnings of $438 as a life insur-

(Ky.App.1986); *Flynn v. Flynn,* 341 Pa.Super. 76, 491 A.2d 156 (1985). Where the pension is not vested, there are a number of factors that determine its value. *See* Troyan, *Pension Evaluation and Equitable Distribution,* 10 Fam.L.Rep. 3001 (1983); B. Goldberg, Valuation of Divorce Assets ch. 9 (1984).

16. We assume this is the disposable retired or retainer pay as set out in 10 U.S.C. 1408(a)(4).

17. Because pension contributions by an employee are only a small portion of the ultimate pension benefit, we disapprove of any attempt to place a dollar value only on an employee's contribution payments made during the marriage as an appropriate method of determining the equitable distribution share. This appeared in part to be the circuit court's approach. *See* note 1, *supra.*

ance application processor. Her husband had a net income of $2,520 per month.

We stated in *Molnar* that it was unrealistic to believe that the former wife would be able to complete a college degree in computer science, which she was exploring, while working full time or that she would be able to obtain employment as a computer programmer so late in life even if she were to obtain a degree. In Syllabus Point 3 of *Molnar,* we set out guidelines to determine whether rehabilitative alimony was proper:

"There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony."

*See also Luff v. Luff,* 174 W.Va. 734, 329 S.E.2d 100 (1985).

In this case, Mrs. Butcher was fifty years of age at the time of the divorce. She graduated from high school, but had no particular skills. The parties stipulated that she was "unqualified for all but minimum wage types of employment." She was at the time of the divorce employed as a part-time cleaning lady at a local motel and earned approximately $200 per month. Under the circuit court's order, she received $250 a month as child support for their sixteen-year-old son. In addition to his retirement pay of $1,262 a month, Mr. Butcher earned $800 a month as a truck driver.

We find that the award of six-months rehabilitative alimony was erroneous under the *Molnar* standard. There is nothing in the record to support the conclusion that Mrs. Butcher in view of her age and lack of job skills would ever become self-sufficient.

The rehabilitative alimony must be viewed in light of our ruling that Mrs. Butcher is entitled to a 49 percent share of her husband's military pension as a marital asset under our equitable distribution statute. This will generate income of $619.73 per month which can be considered under W.Va.Code, 48-2-16, in determining whether additional alimony is warranted. We stress that income produced from marital distribution property, although a factor to be considered in awarding alimony and child support under W.Va.Code, 48-2-16(b)(5), is not subject to be diminished even where a proper award of rehabilitative alimony is given. This is because it is a marital asset, that is to say, a property interest which has accrued to the spouse during the marital relationship.

For the foregoing reasons, the judgment of the Circuit Court of Randolph County is reversed insofar as it denied consideration of the military retirement benefits for alimony and equitable distribution and granted only temporary rehabilitative alimony. The case is remanded for the division of the retirement benefits in accordance with this opinion and for such further proceedings as may be necessary.

Reversed and Remanded With Directions.