358 S.E.2d 448

**Nancy Hager GREESON (Weaver)**

v.

**Robert Standfier GREESON.**

**No. 17016.**

Supreme Court of Appeals of
West Virginia.

June 11, 1987.

Rudolph L. DiTrapano and Joshua I. Barrett, DiTrapano & Jackson, Charleston, for appellant.

Michael A. Braun, Charleston, for appellee.

PER CURIAM:

This is an appeal by Nancy Hager Greeson (Weaver) from a divorce decree entered by the Circuit Court of Kanawha County on March 26, 1984. On appeal the appellant claims that the trial court erred in failing to order a distribution of the couple's property in accordance with the requirements of the equitable distribution statute and in failing to award her sufficient alimony. After examining the record, we conclude that the appellant's assertions are without merit, and we affirm the decision of the Circuit Court of Kanawha County.

The appellant, Nancy Hager Greeson, and the appellee, Robert Standfier Greeson, were married on March 10, 1982. At the time of the marriage Robert Standfier Greeson owned a house located in Charleston, West Virginia, worth around $250,000. Approximately $140,000 of that represent-ed equity. He also had substantial savings and owned stock in the Union Carbide Corporation and a company called Conquest Exploration. His total income exceeded $100,000 a year. The appellant, on the other hand, worked for the Business Round Table in New Jersey and earned $18,000 a year. To enter into the marriage she gave up her job, gave away certain of her personal possessions, and moved from New Jersey to Charleston, West Virginia.

Shortly after the marriage, difference arose between the appellant and her husband, and they last cohabitated in May, 1983. On July 15, 1983, slightly over a year after the marriage, the appellant sued for divorce. In her complaint she prayed that she be awarded permanent alimony and that an equitable distribution be made of the parties' property. Hearings were held on the complaint before a special commissioner on January 13, 1984, and before a judge of the Circuit Court of Kanawha County on September 12, 1984.

During the hearings substantial evidence was developed concerning the earning capacities, the earnings, and assets of the parties. The evidence indicated that the appellant, at that time, was 43 years old and in good health. She had a high school education and one year of business school training. A vocational counselor indicated that she had above-average clerical skills and stated that, if she chose to remain in the Charleston area, she could enter the job market at $9,500 per year. The appellant owned no significant property other than certain furniture which was valued at less than $2,000.

The appellant's husband was likewise in good health. He was making an annual salary of $104,000, plus bonuses which provided an additional $14,000. He was a director of Conquest Exploration and collected $11,000 annually in director's fees. He owned between 120 and 130 shares of the Union Carbide Corporation, $13,000 worth of securities in Conquest Exploration, had $132,000 in the Union Carbide corporate savings plan, and $21,000 in various bank accounts. He owned the marital residence, which was valued at $250,000, a $12,000

Fiat sports car, and a $21,000 Cadillac El Dorado. He owed $106,000 on the house and between $15,000 and $17,000 on an unsecured note used to purchase the Cadillac.

Additional evidence introduced during the hearings showed that the appellant had performed the usual homemaker services during the marriage.

At the conclusion of the initial hearings the Commissioner recommended that the appellant be awarded alimony of $1,000 per month for a period of two years. The Commissioner also recommended that for the fourteen month period during which she performed homemaker services the appellant should be awarded a lump sum of $3,000.

Following the filing of the Commissioner's report and the various exceptions of the parties to it, the Circuit Court of Kanawha County conducted an additional hearing on the question of attorney fees and costs, and on March 26, 1985, entered the order from which the appellant now appeals. Among other things, the court adopted the Commissioner's recommendation that the appellant be paid alimony of $1,000 per month for two years. Additionally, the judge ordered that the appellee pay $100 per month alimony after the expiration of the initial two-year period. The court increased the award for homemaker services from $3,000 to $8,000. The court also granted the appellant attorney fees of $3,750 and other costs in the amount of $1,500.

An order correcting a scrivner's error was entered by the court on November 26, 1985. That order specified that the alimony payments due the appellant would expire upon the remarriage of the appellant or the death of either party, but provided further that the alimony due during the initial two-year period constituted a charge against the appellee's estate until paid or until the death or remarriage of the appellant.

On appeal the appellant argues that the trial court erred in failing to award her an equitable interest in the marital home and in failing to evaluate her homemaker services in conformity with the standard set forth in *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983).

■ The appellant's claim to an equitable interest in the marital home is predicated upon the holding of this Court in *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981). In the *Patterson* case the Court recognized that under certain circumstances a trial court may declare a constructive trust in the property titled solely in the name of one party to a divorce proceeding in favor of the other spouse. The specific circumstances which must be shown to establish a constructive trust are detailed in syllabus point 4:

> Before a trial court may properly impress a constructive trust on property titled in the name of one spouse for the benefit of the other, the spouse seeking the trust must by a preponderance of the evidence: (1) overcome the presumption that there was a gift between the parties, and (2) show that he or she is otherwise entitled to the declaration of a constructive trust. Entitlement to a constructive trust requires: (a) a showing that the party transferred to his or her spouse money, property, or services which were actually used to procure property titled in the other spouse's name only; (b) that the transfer was induced by (i) fraud, (ii) duress, (iii) undue influence, (iv) mistake, (v) breach of implicit fiduciary duty, or (vi) that in light of the dissolution of the marriage the other spouse would be unjustly enriched by the transfer.

A critical showing which must be made under this rule to establish a constructive trust is that the spouse who seeks the trust must demonstrate that he or she transferred money, property, or services to the other spouse which were actually used by the other spouse to procure property which was titled in the other spouse's name only.

■ In the case presently under consideration, the uncontradicted evidence shows that the appellant's husband had accumulated almost all the equity in the marital residence before the parties' marriage. During the marriage he alone worked to provide an income for the parties. Al-

though the appellant provided homemaker services, there is no evidence that she provided any money or property used to procure the property. These facts militate against the finding of a constructive trust.

■ In LaRue v. LaRue, 172 W.Va. 158, 304 S.E.2d 312 (1983), this Court recognized that the doctrine of equitable distribution provides that a spouse in a divorce proceeding may be compensated for homemaker services provided during a marriage. Relating to this point, the Court stated in syllabus point 7:

> Equitable distribution for homemaker services is not limited to the giving of a possessory interest in real estate. A court may determine that a lump-sum monetary amount should be awarded. The concept of homemaker services is not to be measured by some mechanical formula, but instead rests on a showing that the homemaker has contributed to the economic well-being of the family unit through the performance of the myriad of household and child-rearing tasks which make up the term "homemaker services." In valuing this service, the length of the marriage is an important factor and consideration should be given to the quality of the services.

In the instant case the parties had been married for only slightly more than one year at the time the appellant filed her divorce complaint. The evidence shows that during this period of time the appellant provided homemaker services. To compensate for these services the circuit court, in the divorce decree, awarded the appellant $8,000.

The record, as made before the commissioner and the circuit court, failed to show what the quality of the appellant's homemaker services actually was. There was no showing that the services were in any way materially different from those of the average housewife, and although the appellant provided child care for a child by her previous marriage, the parties to this proceeding had no children.

Given the very short duration of the services rendered by the appellant and the nature of the record as developed, this Court cannot conclude that the trial court's $8,000 award for homemaker services constituted an abuse of discretion.

■ The appellant also claims that the circuit court abused its discretion in limiting alimony to a two-year rehabilitative award, which was thereafter to be reduced to a nominal amount, where there was no evidence to show that rehabilitation was feasible. Further, she argues that the judge abused his discretion in making an award which was clearly inadequate in light of her need, the appellee's financial strength, and his fault in the dissolution of the marriage.

In the instant case, evidence was introduced showing that prior to her marriage the appellant earned $18,000 a year, and that after her marriage, had she continued working, that salary would have been raised to $21,000 per year. At the time of the divorce hearing an expert testified that the appellant could enter the job force in Charleston, West Virginia, at $9,500 per year, and that that amount would rise after she obtained some experience in her job. The evidence also shows that the appellant was in good health and capable of working. She had not been out of the work force for a substantial period of time.

In Molnar v. Molnar, 173 W.Va. 200, 203, 314 S.E.2d 73, 76 (1984), this Court stated that:

> Rehabilitative alimony has been utilized frequently where a younger dependent spouse entered marriage with marketable skills, which then deteriorated through non-use, or the dependent spouse evidenced a capability for self-support, which could be developed through training or academic study. In these circumstances, an award of alimony for a limited period of time is provided to give such spouse an opportunity to rehabilitate old skills or acquire new ones.

In the present case, as previously stated, the trial court ordered that the appellant be paid rehabilitative alimony in the amount of $1,000 per month for two years. The facts show the appellant was capable of reentering the job force at the rate initially of $9,500 per year. That $9,500 per year, combined with $12,000 rehabilitative alimo-

ny, would provide the appellant with $21,500 per year income for a two year period, during which the evidence suggests she could rehabilitate her job skills and develop some experience in new employment. The $21,500 per year is substantially the same amount that the appellant would have been earning, according to testimony adduced during the trial of this case, if she remained in her pre-marital employment. This Court believes that, in light of the totality of the circumstances in this case, the appellant's assertion with regard to the rehabilitative alimony award is without merit.

Finally, in view of the fact that the parties were married for a relatively short period of time, that the appellant apparently is capable of working and becoming self-supporting, and that the court awarded her rehabilitative alimony to afford her an opportunity to achieve that status, and in view of the further fact that the trial court awarded the appellant an amount in equitable distribution for the homemaker services which she rendered during marriage, the trial court's awarding the appellant $100 per month permanent alimony did not constitute an abuse of discretion.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.