375 S.E.2d 592

**Frederick Paul QUEEN**

v.

**Betty Lou QUEEN.**

**No. 18256.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

LaVerne Sweeney, Grafton, for appellant.

R. Sue Core, Elkins, for appellee.

## PER CURIAM:

Betty Lou Queen appeals from a final divorce decree of the Circuit Court of Taylor County contending that the court abused its discretion in awarding rehabilitative alimony. The circuit court awarded $300 per month alimony for two years.

Betty and Paul Queen were married on December 19, 1953. During the thirty-three years of their married life, they raised two children who are now over eighteen years of age. When this case was heard by the circuit court, Mrs. Queen was fifty-one years old.

Mrs. Queen worked as a sales clerk earning a net monthly income of $511.94. At a hearing, she asserted that her monthly expenses, including medical benefits and employment related transportation expenses, totaled $1,431.12. Her husband, who worked as a laborer with Harmon Construction Company, earned approximately $29,000 in 1984.

Mrs. Queen testified that during the course of the marriage, she was a homemaker and primary caretaker for their children while Mr. Queen earned the cash income for the household. She had a high school education with no further training or employment skills. When her children left home, she entered the work force as a part-time sales clerk. In an attempt to better herself and obtain medical benefits, she accepted full-time employment as a sales clerk at a slightly lower wage. Mrs. Queen testified that she hoped to increase her earnings before she reached sixty-five years of age, but did not know of any present jobs available to her that would allow her to substantially increase her earnings by then. There was a possibility of advancement to a store managerial position with her employer, but no evidence was produced concerning the likelihood of such advancement or the possible earnings in the management position.

Mrs. Queen's primary error centers on the alimony award and its two-year limitation. This type of alimony is often characterized as rehabilitative alimony. We have placed some limits on the use of rehabilitative alimony, as outlined in Syllabus Point 3 of *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984):

> "There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to recon-

sider the amount and duration of rehabilitative alimony."

We believed that the "key ingredient" must be a realistic assessment of the dependent spouse's potential work skills and the availability of a relevant job market. In *Molnar*, after a twenty-five year marriage, the dependent spouse, Mrs. Molnar, earned $438 net monthly pay in a clerical job and expressed interest in increasing her earning power by obtaining a degree in computer science. We found the trial court's award of rehabilitative alimony to be an abuse of discretion where the record did not sufficiently demonstrate that she had the ability to earn a computer science degree or that, at the advanced age when she would complete the degree, she would find work in that field. We believed it reasonable to require that some evidence be offered to prove that she could realistically achieve a college degree, given her long absence from academic pursuits and no previous academic training in the selected field.

In *Butcher v. Butcher*, 178 W.Va. 33, 357 S.E.2d 226 (1987), we found an award of six-months rehabilitative alimony erroneous under the *Molnar* standard. In that case, Mrs. Butcher was fifty years of age, had no education or training beyond a high school diploma, and was unqualified for all but minimum wage types of employment. At the time of her divorce, she was employed as a part-time cleaning lady at a local motel. During her thirty year marriage, Mrs. Butcher maintained the home and raised the parties' three children. *See Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985).

We found rehabilitative alimony appropriate in *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), for a middle-aged wife with a college education, but there the court order left open the possibility of permanent alimony in the future if she were unable to become employed. Here, there was no such provision in the final order. The right to review the rehabilitative alimony award was a point we stressed in *Molnar*, 173 W.Va. at 205, 314 S.E.2d at 78.

In this case, the circuit court rejected permanent alimony as unnecessary and unfair to Mr. Queen because his income would be expected to decrease due to his age and his heavy labor-type employment, while Mrs. Queen had every expectation of advancing in her job with corresponding increases in income. The court also considered that Mrs. Queen would have a steady source of income as a result of her share of the equitably distributed assets of the marriage. It awarded temporary alimony for a reasonable period of time to liquidate the joint property of the parties and allow Mrs. Queen to become established in her new job.

We believe the record does not support this award of alimony. While the circuit court believed that advancing age would result in a decline in income for Mr. Queen, the court did not address the steady growth in the company which he solely owned, Queen Blacktop Sealer Company, as established by the financial disclosure reports. Nor did the court assess Mr. Queen's ability, as he aged, to manage his business without performing arduous labor. Furthermore, the record established that Mr. Queen's wages at Harmon Construction Company ranged from $12.00 to $17.00 per hour, while Mrs. Queen was paid at the minimum wage rate. The record did not establish that her potential wages as a local retail store manager in northern West Virginia would approach those earned by Mr. Queen in the construction industry. More importantly, it was not clear from the record whether Mrs. Queen realistically could obtain a management position.

We conclude that the award of alimony by the Circuit Court of Taylor County was erroneous and, therefore, reverse and remand this case for a further award of alimony.

REVERSED AND REMANDED.