420 S.E.2d 916

**Stephen C. SMITH, Plaintiff Below, Appellee,**

v.

**Joyce Ann Maurer SMITH, Defendant Below, Appellant.**

**No. 20726.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1992.

Decided July 22, 1992.

Ronald J. Flora, Milton, for appellee.

James M. Cagle, Charleston, for appellant.

PER CURIAM:

In this case, Joyce Smith appeals from an order of the Circuit Court of Putnam County which granted a divorce to her husband, Dr. Stephen Smith. Mrs. Smith makes several assignments of error concerning the trial court's failure to award alimony. Mrs. Smith also asks to be awarded attorneys' fees. We address each assignment individually.

I.

Dr. and Mrs. Smith met while Dr. Smith was in medical school in Huntington. Mrs. Smith, a widow with two sons, taught nursing. They married in July, 1980, before Dr. Smith's final year of medical school. After Dr. Smith's graduation, the family relocated to Madison, Wisconsin, where Dr. Smith trained as a resident physician. In December, 1981, the couple's daughter was born. While in Wisconsin, Mrs. Smith initially worked as a nurse, but later entered

a program to pursue a Master's degree in community health nursing. During this time, the family lived on Dr. Smith's salary, his moonlighting income, Mrs. Smith's stipend, and her sons' Social Security survivors' benefits.

The family returned to West Virginia in 1985. Dr. Smith initially joined a group medical practice, but later started his own solo practice. Mrs. Smith taught nursing at the University of Charleston, and then worked in Dr. Smith's office for approximately six months in 1987. She later took a position as a school nurse in Putnam County, where she was working at the time of the evidentiary hearings.[1] She earned approximately $20,000 per year in the school nurse position and took temporary jobs during the summer months to supplement this.

Dr. and Mrs. Smith separated in September, 1988, and Dr. Smith filed for divorce one month later. Mrs. Smith answered and counterclaimed in November, 1988. Following litigation, the family law master filed the recommended decision in October, 1990. The trial court finally filed the order from which Mrs. Smith appeals in May, 1991.

## II.

Mrs. Smith complains that the circuit court erroneously failed to award her alimony or to determine that Dr. Smith was unjustly enriched by the use of the social security benefits her sons received as a result of the death of their father. In response, Dr. Smith argues that alimony is inappropriate because Mrs. Smith could earn more than she is currently making at her job as a school nurse, which Dr. Smith characterizes as underemployment. He also claims that he was not unjustly enriched by the use of Mrs. Smiths' sons' funds.

### A.

The family law master found no basis to award alimony of any type. The circuit court adopted this finding and denied alimony. Mrs. Smith seeks rehabilitative alimony to enable her to obtain a Ph.D. She testified that with such a degree, she could earn up to $50,000 per year teaching nursing. With her Master's degree, she testified that she could earn up to $30,000 a year, but only by working as a clinical nurse at a hospital, which would require shift work outside of her field of specialization. The cost of obtaining the advanced degree was estimated to be $12,000 a year over a two-year period. Dr. Smith's gross earnings from his medical practice were shown to be approximately $155,000 a year.

■ We recognized the concept of rehabilitative alimony in *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984), and in Syllabus Point 1 gave this explanation of the term and its purpose:

"The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained."

In most of our cases in this area, the issue has been whether the trial court was correct in awarding rehabilitative alimony rather than permanent alimony.[2]

In several cases we have affirmed an award of rehabilitative alimony where the spouse had some job skills and could upgrade them through training. *See, Hanshaw v. Hanshaw*, 180 W.Va. 478, 377 S.E.2d 470 (1988); *Hoak v. Hoak*, 179 W.Va. 509, 370 S.E.2d 473 (1988); *Greeson v. Greeson*, 178 W.Va. 189, 358 S.E.2d 448 (1987). *Hoak* is perhaps the most analogous of these cases. There, the wife had a

---

1. At the time the appeal was filed with this Court, Mrs. Smith was employed by the Charleston Area Medical Center.

2. *See, e.g., Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990); *Queen v. Queen*, 180 W.Va. 121, 375 S.E.2d 592 (1988); *Gorby v. Gorby*, 180 W.Va. 60, 375 S.E.2d 424 (1988); *Butcher v. Butcher*, 178 W.Va. 33, 357 S.E.2d 226 (1987); *Molnar v. Molnar, supra.*

college degree and was awarded two years of rehabilitative alimony in order to secure a specialty in accounting. The main difference between this case and *Hoak* is that at the time of the divorce, Mrs. Hoak was only working on a sporadic basis, while Mrs. Smith was working full time.

Other jurisdictions have authorized rehabilitative alimony where the wife was working full time but was able to demonstrate that rehabilitative alimony would materially increase her earning capacity. *See, e.g., In Re Marriage of Cheger*, 213 Ill.App.3d 371, 157 Ill.Dec. 116, 571 N.E.2d 1135 (1991); *York v. York*, 823 S.W.2d 45 (Mo.App.1991); *Wahlberg v. Wahlberg*, 479 N.W.2d 143 (N.D.1992); *Brooks v. Brooks*, 470 N.W.2d 827 (S.D.1991). We note that in none of these cases was the husband's ability to pay an issue. No issue of ability to pay should arise in this case because Dr. Smith's income was found to be approximately $155,000 a year.

Finally, we note that the Legislature has specifically recognized the right of a spouse to seek this type of alimony. W.Va. Code, 48–2–16(b) (1984), sets out the factors to be considered in awarding alimony, among which are:

> "(7) The educational qualifications of each party;
>
> (8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;
>
> (9) The anticipated expense of obtaining the education and training described in subdivision (8) above; ...."

█ We find that the circuit court erred in not favorably considering Mrs. Smith's rehabilitative alimony claim. On remand, the record needs to be developed further as to the economic benefits from the Ph.D. degree, but the award should not be rejected merely because Mrs. Smith is currently capable of earning $30,000 a year. Where a husband enjoys significantly higher income than the wife, the wife's claim for additional training to increase her income should be favorably considered.

### B.

█ We find Mrs. Smith's claim that Dr. Smith has been unjustly enriched by use of her sons' survivors' benefits unconvincing. Mrs. Smith testified that during the period the family resided in Wisconsin, she deposited these monies into the parties' joint account. The money in the joint account was then used to pay household expenses. It is undisputed that Mrs. Smith's sons were part of the household during this time and thus received the benefit of the funds. We note, additionally, that we have held that the transfer of separate property to a joint title creates a presumption of gift to the marital estate. In Syllabus Point 7 of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), we stated:

> "Under W.Va.Code, 31A–4–33 (1969), where separate funds are deposited in a joint account in the names of both husband and wife, such funds are presumed to be marital property for purposes of equitable distribution."

Mrs. Smith's commingling of these funds in a joint account created the presumption of marital property. They were subsequently used for marital purposes, thus extinguishing her right to claim that Dr. Smith was unjustly enriched by their use.

### III.

Mrs. Smith also argues that the trial court erred in failing to order Dr. Smith to contribute to the health care of their daughter. At the time of the final decree, this issue was controlled by W.Va.Code, 48–2–15(b)(3) (1990), which enables a court to order, as an incident to the payment of child support, either party to purchase or to continue in effect health insurance cover-

age for a minor child if it can be done for a reasonable cost.[3] Such payments under this section "shall be deemed to be alimony, child support or installment payments for the distribution of marital property, in such proportions as the court shall direct...." W.Va.Code, 48–2–15(b)(3). Neither the family law master nor the trial court addressed this issue.

We note that in 1991, the Legislature enacted W.Va.Code, 48–2–15a, which went into effect several weeks after the final decree was entered in this case.[4] In enacting this new section, the Legislature did not repeal W.Va.Code, 48–2–15(b)(3). The two statutory provisions are similar from a substantive standpoint, although W.Va. Code, 48–2–15a contains much more procedural detail. This latter section also provides that such child health care costs "... shall be considered by the court in applying the child support guidelines ..." W.Va. Code, 48–2–15a(c).

■ From a review of both W.Va.Code, 48–2–15(b)(3), and W.Va.Code, 48–2–15a,

---

**3.** W.Va.Code, 48–2–15(b)(3) (1990) provides:

"As an incident to requiring the payment of alimony or child support, the court may order either party to continue in effect existing policies of insurance covering the costs of health care and hospitalization of the other party and the minor children of the parties: Provided, That if the other party is no longer eligible to be covered by such insurance because of the granting of an annulment or divorce, the court may require a party to substitute such insurance with a new policy to cover the other party, or may consider the prospective cost of such insurance in awarding alimony to be paid in periodic installments. If there is no such existing policy or policies, the court shall order such health care insurance coverage to be paid for by the noncustodial parent, if the court determines that such health care insurance coverage is available to the noncustodial parent at a reasonable cost. Payments made to an insurer pursuant to this subdivision, either directly or by a deduction from wages, shall be deemed to be alimony, child support or installment payments for the distribution of marital property, in such proportion as the court shall direct: Provided, however, That if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments made pursuant to this subdivision shall be deemed to be alimony: Provided, further, That the designation of insurance coverage as alimony under the provisions of this subdivision shall not, in and of itself, give rise to a subsequent modification of the order to provide for alimony other than insurance for covering the costs of health care and hospitalization."

The 1991 amendments to W.Va.Code, 48–2–15, did not alter this provision. *See* 1991 W.Va. Acts, ch. 46.

**4.** The relevant substantive portion of W.Va. Code, 48–2–15a, is found in subsections (b) and (c), which state:

"(b) In every action to establish or modify an order which requires the payment of child support, the court shall ascertain the ability of each parent to provide medical care for the children of the parties. The court shall order one or more of the following:

(1) The court may order either parent or both parents to provide insurance coverage for a child, if such insurance coverage is available to that parent on a group basis through an employer or through an employee's union. If similar insurance coverage is available to both parents, the court shall order the child to be insured under the insurance coverage which provides more comprehensive benefits. If such insurance coverage is not available at the entry of the order, the order shall require that if such coverage thereafter becomes available to either party, that party shall promptly notify the other party of the availability of insurance coverage for the child.

(2) If the court finds that insurance coverage is not available to either parent on a group basis through an employer, multi-employer trust or employees' union, or that the group insurer is not accessible to the parties, the court may order either parent or both parents to obtain insurance coverage which is otherwise available at a reasonable cost.

(3) Based upon the respective ability of the parents to pay, the court may order either parent or both parents to be liable for reasonable and necessary medical care for a child. The court shall specify the proportion of the medical care for which each party shall be responsible.

(4) If insurance coverage is available, the court shall also determine the amount of the annual deductible on insurance coverage which is attributable to the children and designate the proportion of the deductible which each party shall pay.

(c) The cost of insurance coverage shall be considered by the court in applying the child support guidelines provided for in section eight [§ 48A–2–8], article two, chapter forty-eight-a of this code.

we conclude that the Legislature has authorized trial courts in divorce actions to provide for medical coverage of the minor children where the same is available at a reasonable cost. On remand, the issue of Dr. Smith's contributions to his daughter's health care should be determined in accordance with these statutes.

### IV.

Finally, Mrs. Smith cites as error the trial court's ruling that each party pay his or her own attorney's fees and that they split the litigation costs, which was contrary to the family law master's recommendation. The family law master had recommended that each party pay one-half of the family law master's fee, but that Dr. Smith pay Mrs. Smith's attorney's fees and all other litigation costs. We hold that Dr. Smith should pay Mrs. Smith's attorney's fees and all costs of litigation, including the family law master's fee.

W.Va.Code, 48–2–13(a)(4) (1992), authorizes the trial court in a divorce proceeding to "compel either party to pay attorney's fees and court costs reasonably necessary[.]" We discussed this provision in *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), where we concluded that this section authorized payment of a spouse's attorney fees as reasonably necessary throughout the divorce proceedings, including an appeal to this Court. We concluded in Syllabus Point 14 of *Bettinger:*

> "The purpose of W.Va.Code, 48–2–13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees during the course of the litigation."

The touchstone of the award is that one spouse has a significantly higher income than the other. It is obvious in this case that Dr. Smith is in a much better financial situation than Mrs. Smith. Consequently, Mrs. Smith was entitled to obtain attorneys' fees and costs.[5]

### V.

For the reasons stated above, we reverse the judgment of the Circuit Court of Putnam County, and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

NEELY, Judge, dissenting in part:

I concur in the result; however, I dissent to the cynical, ironic and manipulative citation to *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990). *Whiting v. Whiting* has not only been *de facto* overruled by *Charlton v. Charlton*, 186 W.Va. 670, 413 S.E.2d 911 (1991), it has also been made a laughing stock.

---

5. Mrs. Smith also contends that the trial court erred in not ordering Dr. Smith to pay for the college education of the parties' daughter and to obtain a life insurance policy, naming their daughter as an irrevocable beneficiary, as a means of ensuring continued child support payments in the event of his untimely death. This issue was not raised at the hearing before the family law master or in the depositions of the parties. We have repeatedly held that this Court will not decide nonjurisdictional questions which have not been raised in the proceedings below. *See, e.g., Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991); *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990); *Stonebraker v. Zinn*, 169 W.Va. 259, 286 S.E.2d 911 (1982). Consequently, we decline to address these issues on appeal.