504 S.E.2d 917

**Sharon L. WARD, Appellant,**

v.

**Richard L. WARD, Appellee.**

No. 24742.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1998.

Decided July 2, 1998.

Nelson M. Michael, E. Lowell Markey, Keyser, for Appellant.

David H. Webb, Keyser, for Appellee.

**PER CURIAM:** [1]

■ This divorce action is before this Court upon appeal of a final order of the Circuit Court of Mineral County entered on March 12, 1997. The appellant, Sharon L. Ward, contends that the circuit court abused its discretion in awarding rehabilitative alimony instead of permanent alimony. Adopting a recommendation of the family law master, the circuit court ordered the appellee, Richard L. Ward, to pay the appellant rehabilitative alimony in the amount of $1000.00 per month for a period of thirty months beginning on October 1, 1996.

This Court has before it the petition for appeal, all matters of record, and the briefs of counsel. For the reasons set forth below, this Court finds that the circuit court abused its discretion by granting rehabilitative alimony.

I

The parties were married on May 25, 1968, and after almost twenty-eight years of marriage, separated in April 1995. Three children were born of the marriage, but they were emancipated adults by the time Mrs. Ward filed a complaint for divorce on February 21, 1996. At the time of the final hearing, the parties were both forty-nine years old.

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

During the marriage, Mrs. Ward stayed at home and raised the parties' children. However, she did work outside the home on two brief occasions as a county health department case worker and a child day care assistant. Mr. Ward pursued a career as a tire company executive during the marriage, working for a subsidiary of the Goodyear Tire and Rubber Company.

By the time of the final hearing, Mrs. Ward had moved to Atlanta, Georgia, and had taken a job as a cashier and receptionist at an auto dealership. Her gross monthly income was $952.00 and her monthly expenses totaled $1,989.00. Mr. Ward had moved to Akron, Ohio, because of a job promotion and was earning a gross monthly income of $8,450.00. His monthly expenses totaled $4,350.00.[2]

The final hearing occurred on September 19, 1996. At that time, the parties reached an agreement regarding equitable distribution of their marital estate. However, the issue of alimony remained unresolved. Following the hearing, the family law master recommended that Mr. Ward be ordered to pay Mrs. Ward $1,000.00 per month for thirty months as rehabilitative alimony. The divorce was granted on the grounds of irreconcilable differences. On October 15, 1996, the circuit court adopted the family law master's recommendation. Mrs. Ward timely filed a petition for review, but was denied relief by the circuit court in its final order entered on March 12, 1997.

## II

On numerous occasions, this Court has set forth the applicable standard of review for a recommended order of a family law master. We have observed that such orders are reviewable by a circuit court pursuant to statute, W. Va.Code § 48A–4–16 (1993) and W. Va.Code § 48A–4–20 (1997), and pursuant to this Court's *Rules of Practice and Procedure for Family Law.* We also recently stated in Syllabus Point 2 of *Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414 (1997): "A circuit court should review findings of fact made by a family law master

only under a clearly erroneous standard, and it should review application of law to the facts under an abuse of discretion standard." *See also* Syllabus Point 1, *Stephen L.H. v. Sherry L.H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995). In Syllabus Point 3 of *Pearson, supra,* we noted that "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." *See also* Syllabus Point 3, *Sherry L.H., supra.* Finally, we stated in Syllabus Point 1 of *Pearson, supra:*

> In reviewing challenges to findings made by a family law master that were also adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*See also* Syllabus Point 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

Generally, rehabilitative alimony "connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Syllabus Point 1, *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984). In *Molnar,* we explained that in determining whether to award rehabilitative alimony, "a key ingredient must be a realistic assessment of the dependent spouse's potential work skills and the availability of a relevant job market." 173 W.Va. at 204, 314 S.E.2d at 77. In Syllabus Point 3 of *Molnar,* we determined that:

> There are three broad inquires that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabili-

---

**2.** Its appears that, pursuant to a private agreement, Mr. Ward began paying Mrs. Ward

$1000.00 a month shortly after they separated.

tative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

Mrs. Ward asserts that the record failed to support an award of rehabilitative alimony in lieu of permanent alimony. She contends that she has many of the same attributes as the appellants in *Molnar* and *Queen v. Queen,* 180 W.Va. 121, 375 S.E.2d 592 (1988). In both of those cases, we concluded that the appellants were entitled to a permanent alimony award.

In *Molnar,* the parties divorced after a twenty-five year marriage. Mrs. Molnar, the dependent spouse, earned $438.00 net monthly pay in a clerical job. Her monthly expenses totaled $1,569.80. While Mrs. Molnar expressed an interest in obtaining a degree in computer science to increase her earning power, her advanced age indicated that she probably would not be able to find work even if she was able to complete the degree. Accordingly, we found that the trial court's award of rehabilitative alimony was an abuse of discretion.

In *Queen,* the parties divorced after thirty-three years of marriage. Mrs. Queen, the dependent spouse, was working as a sales clerk earning a net monthly income of $511.94. Her monthly expenses totaled $1,431.12. Mrs. Queen had a high school education and only entered the work force after her children left home. Again, we found the trial court abused its discretion in making an award of rehabilitative alimony.

In rejecting an award of permanent alimony in this case, the trial court considered that Mrs. Ward received a substantial award of the assets of the marriage. Thus, rehabilitative alimony was fixed in the amount of $1000.00 per month for thirty months. Upon review of the record, we be-

lieve the record does not support this award of alimony. Although Mrs. Ward received a significant cash award from Mr. Ward's 401K plan, Mr. Ward retained several assets himself.[3] As discussed above, Mrs. Ward is now employed in a job which provides her with an income of approximately $12,000.00 a year. However, Mr. Ward makes in excess of $100,000.00 a year. The record did not establish that Mrs. Ward's potential wages as a cashier, even in the Atlanta, Georgia area, would approach those earned by Mr. Ward as a business executive. Therefore, we conclude that the Circuit Court of Mineral County abused its discretion in making an award of rehabilitative alimony. Accordingly, the final order is reversed and this case is remanded for a further award of permanent alimony.

---

**3.** Pursuant to the settlement agreement, Mr. Ward agreed to pay Mrs. Ward the sum of $62,000.00 in cash from his 401K plan. Mrs. Ward also received savings bonds with a face value of $4,000.00. She had previously received $7,000.00 in cash from the parties' jointly-held bank accounts. Mr. Ward received two automobiles, the equity in the marital home which had been sold, the furnishings and other personal property in the home, and the full fringe benefits

from his employment which included a pension plan, whole life insurance, stock options, etc., except for his 401K plan. However, Mr. Ward had approximately $30,000.00 left in his 401K plan after he made the $62,000.00 cash payment to Mrs. Ward. Mr. Ward agreed to assume the marital debts, which totaled approximately $22,000.00, and capital gains taxes due as a result of the sale of the marital home.