# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBERT GENE HITT II,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-220**   (Fam. Ct. Nicholas Cnty. Case No. FC-34-2023-D-160)

**KIMBERLY FAE SEABOLT,**
**Respondent Below, Respondent**

**FILED**

**April 29, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Gene Hitt II ("Husband") appeals a May 2, 2025, final divorce order entered by the Family Court of Nicholas County holding that Husband's separate funds deposited into a new, jointly titled bank account ("account 6921") constituted marital property to be divided equally between the parties. Kimberly Fae Seabolt ("Wife") responded in support of the family court's decision. Husband did not file a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision affirming, in part, and vacating, in part, the family court's order and remanding the matter for further proceedings consistent with this decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Husband and Wife were married on August 4, 2022, and separated on October 15, 2023. Husband is sixty-one years old, and Wife is sixty years old. Prior to the marriage, Husband started a business operating as Metal Craft, Inc. ("Metal Craft"). Husband was the president and sole shareholder of Metal Craft, which was classified by the family court as separate property.[2] In 2023, Wife became vice president and secretary of Metal Craft.[3]

---

[1] Husband is represented by Tim C. Carrico, Esq. Wife is represented by Amber R. Hinkle, Esq.

[2] Husband started Metal Craft in 1999 and sold the business operations to his daughter pursuant to an August 1, 2023, agreement.

[3] By email dated May 31, 2023, to Husband's attorney, Wife submitted her resignation as Metal Craft's vice president and secretary, but she continued to perform business related duties until sometime in October of 2023.

1

On September 22, 2023, Husband transferred $400,000 from a Metal Craft business account to account 6921, a newly opened personal bank account titled in Husband's name with Wife named as the payable on death ("POD") beneficiary. On September 27, 2023, Husband changed the ownership designation on account 6921 by adding Wife as a joint owner with the right of survivorship. On October 4, 2023, Husband wired an additional $662,306.35 into account 6921, which were proceeds from the auction liquidating Metal Craft's equipment, making the balance on account 6921 of $1,062,306.35 at the time.

On October 15, 2023, after an argument with Husband, Wife stayed overnight in a hotel and did not return to the marital home. On October 16, 2023, and October 20, 2023, without informing Husband, Wife transferred a total of $641,900 from account 6921 to three of her separately owned bank accounts. Wife spent the money transferred from account 6921 in various ways. For example, Wife purchased a home (titled solely in Wife's name) in Nicholas County, West Virginia, paid off the remaining mortgage debt on her separately titled South Carolina townhouse, and added money to a separate money market account.

Husband filed a petition for divorce on November 16, 2023, and Wife filed her answer on November 30, 2023. Wife did not disclose the money she withdrew from account 6921 in her financial statement. The family court held a temporary hearing on January 8, 2024, at which Husband argued that the money Wife withdrew from account 6921 on October 16, 2023, and October 20, 2023, was a Metal Craft asset, not a marital asset. Wife countered that the account funds were marital property, and that she took the one-half share to which she was entitled. Further, the parties disputed the date of separation. Husband asserted that the date of separation was October 15, 2023, and Wife argued it was October 16, 2023.

After the temporary hearing, the family court ordered the parties to open a new Metal Craft account and ordered Wife to deposit $550,000 of the $641,900 into the newly opened account pending the final order. However, Wife had not disclosed to the family court that she had spent much of the money she had withdrawn and that it would not be possible for her to deposit $550,000 into this newly opened account.

On January 12, 2024, Husband filed a motion for an expedited status hearing. Thereafter, the family court held a status hearing on January 22, 2024, during which Wife informed the court that she had spent over $500,000 of the $641,900. As such, Wife asserted that she could not deposit $550,000 into the new Metal Craft bank account as previously ordered. As reflected in the court's January 26, 2024, temporary order, the court ordered Wife to deposit $100,000 into a new Metal Craft account which was to serve as an escrow account.

The family court conducted the final hearing over three days, hearing the testimony of the parties and other duly called witnesses, admitting documentary evidence from both

parties, and hearing arguments of counsel. Husband argued that account 6921 was a business account and that he had opened it for the benefit of Metal Craft, to receive and to hold Metal Craft funds to protect them from his daughter, son-in-law, and creditors during the pendency of the sale of the business. Husband continued to argue that the $641,900 was his separate property because it was a Metal Craft asset. Husband asserted that Wife's transfers from account 6921 to her separate bank accounts constituted embezzlement of Metal Craft's funds and that Wife had committed fraud and breached her fiduciary duties as an officer of Metal Craft. Wife stated that she believed that Metal Craft was being liquidated for their retirement and that Metal Craft's business operations were "winding down." Thus, she argued that the funds in account 6921 constituted marital property. Husband argued that he was not winding down the business and that he intended to open a new business with the proceeds.

In its final order entered May 2, 2025, the family court determined that the parties' date of separation was October 15, 2023, and found that Husband failed to rebut the presumption that he had gifted the funds to the marriage; therefore, account 6921 was marital property subject to equitable distribution. Relying on West Virginia Code § 31A-4-33, *Smith v. Smith*, 187 W. Va. 645, 420 S.E.2d 916 (1992), and *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990), the court specifically found that Husband made account 6921 marital property when he retitled the account as a joint account adding Wife as a joint owner.

As to Husband's argument that he opened account 6921 as a Metal Craft account for the sole benefit of Metal Craft, the court found that Husband "fails to recognize the overwhelming evidence otherwise." Further, the court found based upon the evidence presented, specifically the testimony of Husband's tax attorney, that despite Husband's assertions to the contrary, Metal Craft was winding down, and the auction was part of that process. Accordingly, the court found that "[a] winding up supports a finding that the Husband intended to accumulate the corporate assets liquidated to cash by the auction into cash held in Husband's personal name. It is reasonable to find that [Husband] willingly shared the liquidated assets with the Wife."

Moreover, the court found that the bank's account manager who met with Husband and Wife on September 27, 2023, informed Husband that account 6921 was *not* a Metal Craft corporate account, and that Husband made no attempt to change account 6921 to a Metal Craft business account. Instead, Husband added Wife to account 6921 as joint owner. The family court also found that there was no evidence of Wife encouraging or enticing Husband to change the accounts to jointly owned or to add her name to account 6921 with an intent to defraud Husband but rather that Husband voluntarily changed the ownership of the accounts.

Lastly, the court determined that Wife would have to pay Husband $31,001 to accomplish equal division of marital property. The family court order did not address or

consider whether deviation from equal division of marital property would be appropriate, which Husband raised as an alternative argument should the family court find that funds deposited to account 6921 constituted marital property. The court ordered the $31,001 be paid to Husband from the escrow account and that the remaining balance in the escrow account be released to Wife. It is from this order that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Husband raises two assignments of error on appeal. First, Husband argues that the family court erred when it found that Husband failed to rebut the presumption that Husband intended to gift the funds in account 6921 to the marriage and that it was error for the family court to find that the funds constituted marital property subject to equitable distribution.[4] We disagree. The Supreme Court of Appeals of West Virginia ("SCAWV") has held that:

> Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

Syl. Pt. 4, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990). The SCAWV further explained that taking joint title to separate property creates a "rebuttable presumption of gift to the marital estate" and this "presumption may be overcome by a showing that the transferring spouse did not intend to transfer the property to joint ownership or was induced to do so by fraud, coercion, duress, or deception." *Id.* at 459, 396 S.E.2d at 421 (citations and footnote omitted).

---

[4] Husband references other bank accounts in his brief. However, Husband limited his assignments of error and prayer for relief to the family court's rulings regarding account 6921. Accordingly, we will not directly address the other bank accounts.

Later, in *Burnside v. Burnside*, 194 W. Va. 263, 460 S.E.2d 264 (1995), the SCAWV "reaffirm[ed]" its "belief in the wisdom of *Whiting*," and "explicitly adopt[ed] the marital gift presumption established therein . . . This presumption is rebuttable only by clear, cogent, and convincing evidence that a gift was not intended or that the transaction under scrutiny was the result of coercion, duress, or deception." *Id.* at 269, 460 S.E.2d at 270. However, the SCAWV also acknowledged that "there are no bright-line rules in determining what type of evidence is sufficient to rebut the presumption . . . [C]ircumstances existing at the time of the transfer indicative of the owner's intention are considered crucial by the courts in determining whether a gift was made to the marital estate." *Id.* at 272, 460 S.E.2d at 273.

The family court found that while it "may have been Husband's intention" to open account 6921 for the benefit of Metal Craft, there was insufficient evidence to overcome the presumption of a gift to the marriage when Husband added Wife as a co-owner of the bank account.[5] Husband has not however established clear error and we defer to the family court's factual determination and discretion in applying the facts to the law. Accordingly, we affirm the family court's finding that Husband failed to rebut the presumption that the funds transferred into account 6921 were a gift to the marital estate constituting marital property.

Second, Husband presents an alternative argument that, even if the evidence does not support that the presumption of a gift is rebutted, this Court should find that the family court erred when it did not alter the division of marital property pursuant to West Virginia Code § 48-7-103(1)(B).[6] We find merit in this argument insofar as the family court's order does not address this issue. West Virginia Code § 48-7-103(1)(B) provides in part that:

---

[5] In determining whether the presumption of gift to the marriage was rebutted, we may have weighed the evidence differently and arrived at a different conclusion given the record below. However, we recognize the SCAWV's high standard of proof needed to rebut the presumption of gift to the marriage in such circumstances. Moreover, we are mindful of deference afforded to the family court's fact finding incorporated into the standard of review on appeal.

[6] While Husband's alternative argument could have been more thoroughly presented below and on appeal, we find that Husband preserved this argument below by notifying the family court on multiple occasions that he had an alternative argument and included it in his proposed order to the family court. The hearings below were predominately conducted by the family court to gather evidence and take testimony, not to hear legal arguments. The record reflects that Husband worked within the framework of the hearings established by the family court to express and preserve his argument. Husband again presented the issue on appeal by setting forth a separate assignment of error supported by argument and citation to statutory and case law. In our view, the dissent mistakenly asserts that the second assignment of error was not preserved in the record and would have this

5

In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:

…

(B) Funds which are separate property.

In *Stuck v. Stuck*, 218 W. Va. 605, 609, 625 S.E.2d 367, 371 (2005) (per curiam), the SCAWV reiterated that equitable distribution is a three-step process, which includes: (1) classifying the parties' property as marital or nonmarital; (2) valuing the marital assets; and (3) dividing the marital estate in accordance with the principles in West Virginia Code § 48-7-103. In *Stuck*, the SCAWV remanded the family court's order, holding that it failed to complete the third step of the equitable distribution process. *Id.* The SCAWV determined that since the petitioner raised the third step of equitable distribution as an issue, the family court was required to address it.

In the present case, Husband raised the third step of equitable distribution as in issue below and on appeal offering evidence supporting his claim. Accordingly, after the family court determined that account 6921 was marital property subject to equitable distribution, the family court was then required to address West Virginia Code § 48-7-103 to determine whether the equal division presumption should be altered considering that all funds deposited to account 6921 were Husband's separate property prior to the account being retitled just weeks before such separation and that such funds were never used for marital purposes. The May 2, 2025, order fails to address this statutory presumption and analyze whether it is rebutted considering the source of funds deposited in account 6921 and the source of other property that constituted marital property during the short duration of the marriage.

---

Court on its own accord dismiss consideration of Husband's second assignment of error. Further, the lengthy dissent fails to acknowledge that Wife did *not* argue that Husband waived or abandoned his second assignment of error in her brief or at oral argument. We are mindful of our responsibility to issue a written decision on the merits in properly filed appeals within our jurisdiction. *See* W. Va. Code § 51-11-9(a) (2021).

Accordingly, based on our deferential standard of review, we affirm the family court's holding that Husband failed to rebut the caselaw derived presumption of a marital gift as to account 6921, but we vacate the May 2, 2025, order and remand this matter for an analysis pursuant to *Stuck v. Stuck* and West Virginia Code § 48-7-103 to consider in a new order whether the statutory presumption of equal division of marital property is rebutted by a preponderance of the evidence considering the entirety of the unique facts of this case.

                                    Affirmed, in part, and Vacated and Remanded, in part.

**ISSUED:** April 29, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

**CONCURRING, IN PART, AND DISSENTING, IN PART:**

Judge S. Ryan White

WHITE, J., concurring, in part, and dissenting, in part:

I concur with the majority's decision to affirm the family court's order determining that Husband failed to rebut the presumption that he gifted the funds previously held in account 6921 to the marriage by clear, cogent, and convincing evidence. Therefore, the funds previously held in account 6921 were marital property subject to equitable distribution, and not Husband's separate property. However, I dissent from the majority's decision to vacate the family court's order regarding equitable distribution and to remand to the family court to conduct an analysis as to West Virginia Code § 48-7-103(1)(B) because Husband did not properly preserve that issue for appellate review. Accordingly, I would affirm the family court's final order in its entirety.

The Supreme Court of Appeals of West Virginia ("SCAWV") has held that it "will not consider an error which is not properly preserved in the record nor apparent on the face of the record." Syl. Pt. 4, *State v. Browning,* 199 W. Va. 417, 485 S.E.2d 1 (1997). Further, in *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 216, 470 S.E.2d 162, 170 (1996), the SCAWV explained that,

> To preserve an issue for appellate review, a party must articulate it with such
> sufficient distinctiveness to alert a circuit court to the nature of the claimed

7

defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. *See State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995). The forfeiture rule that we apply today fosters worthwhile systemic ends and courts will be the losers if we permit the rule to be easily evaded. It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*Id. See also State v. Costello,* 245 W. Va. 19, 26, 857 S.E.2d 51, 58 (2021) ("Indeed, if any principle is settled in this jurisdiction, it is that, absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal. We have invoked this principle with a near religious fervor."); *Shaffer v. Acme Limestone Co., Inc.,* 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999) ("Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered." (citing *Whitlow v. Bd. of Educ. of Kanawha Cnty.,* 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993))). This Court also follows this general rule. *See PITA, LLC v. Segal*, 249 W. Va. 26, 40, 894 S.E.2d 379, 393 (Ct. App. 2023) (noting that as a general rule, an appellate court will not consider an issue raised for the first time on appeal)*;Phebus v. Smith*, No. 25-ICA-240, 2026 WL 688262 at *3 (W. Va. Ct. App. Feb. 27, 2026) (memorandum decision) ("Generally, we will not consider nonjurisdictional questions raised for the first time on appeal." (citing *Whitlow v. Bd. of Educ. of Kanawha Cnty.,* 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993))).

The record on appeal demonstrates that Husband did not sufficiently articulate the argument that he rebutted the statutory presumption that courts shall divide marital property equally between the parties pursuant to West Virginia Code § 48-7-103, or the argument that the facts warranted an altered distribution of the marital estate as West Virginia Code § 48-7-103(1)(B) permits. Accordingly, Husband did not preserve those issues for appellate review; thus, this Court should not address them on appeal.

Contrary to Husband's argument, the record establishes that the parties argued their respective positions on various issues at the final hearing; however, they concentrated on the issue of whether the funds previously held in account 6921 were Husband's separate property or marital property subject to equitable distribution. Husband asserted that those funds were his separate property because Metal Craft was his separate property and account 6921 was a Metal Craft, Inc. ("Metal Craft") business account. He also denied gifting those funds to the marriage. Conversely, Wife argued that those funds were marital property subject to equitable distribution because Husband gifted them to the marriage when he added her name to account 6921, a personal checking account, making her a joint owner with the right of survivorship.

Only after these lengthy arguments and pointed questions from the family court judge suggesting that the evidence did not fully support Husband's arguments that the funds in account 6921 were his separate property, did Husband, by counsel, state, "[Husband] does have a secondary argument," and explained, "[r]ebutting a presumption of a 50/50 split on the account and—Because 100% of the monies going into that account came from a separate property." That was the full extent of Husband's "secondary argument" during the hearing. Thereafter, the parties resumed arguing whether the funds in account 6921 were marital or separate property.

Near the conclusion of the hearing, the family court instructed the parties to submit memoranda of law addressing the following issues: whether the funds held in account 6921 were marital or separate property; the statutory presumption that those funds were marital and whether Husband rebutted that presumption; and, the statutory presumption that a jointly titled bank account is the property of those named as owners on the bank signature card pursuant to West Virginia Code § 31A-4-33, and whether Husband rebutted that presumption.[7] However, by the end of the hearing, the family court had directed the parties to address all of their arguments in their memoranda, citing legal authority.

Husband, however, did not submit a memorandum of law. Instead, he submitted a "corrected final memorandum divorce order" ("memorandum order") largely drafted as a proposed order. Husband included some narrative sections in his memorandum order discussing the facts of the case, but other than including a section in which he quoted the full text of West Virginia Code §§ 48-7-101-103, and 48-7-105-106, and some of the syllabus points in *Whiting v. Whiting,* 183 W. Va. 451, 396 S.E.2d 413 (1990), *Burnside v. Burnside,* 194 W. Va. 263, 460 S.E.2d 264 (1995), and *Kanawha Valley Bank v. Friend,* 162 W. Va. 925, 253 S.E.2d 528 (1979), Husband did not include any discussion of the law or legal analysis. Importantly, Husband did not argue that he rebutted the presumption that family courts are to divide marital property equally or that the court should alter the distribution of the marital assets. Because Husband drafted his memorandum order in the form of a proposed order, he drafted it stating that the family court accepted and adopted his primary arguments—that the funds previously held in account 6921 were his separate

---

[7] The court's December 20, 2024, Order Scheduling Written Submissions of Issues states, in part, that the court "directed counsel for the parties to prepare written proposed equitable distribution plans reflecting [their] respective positions," and "granted the parties leave to submit written [memoranda] of law with respect to the burden of proof required of the petitioner to overcome the statutory presumption that a jointly titled bank account is the property of the persons named as owner on the bank signature card . . . as opposed to a business account owned by [Metal Craft] . . . a corporate entity contended by the petitioner to be his separate property." The court further ordered that "the parties may submit proposed findings of fact and conclusions of law if they so desire."

property, therefore, not subject to equitable distribution, and that he did not gift those funds to the marriage. Other than including the full text of West Virginia Code § 48-7-103 in his memorandum order, Husband mentions West Virginia Code § 48-7-103(1)(B) once, stating as follows:

> The Court further notes that under West Virginia Code [§] 48-7-103(1)(B)[,] the Court may alter a 50/50 split on a marital asset after consideration of the fact that the asset was acquired by funds which are separate property. It is undisputed that Truist Account 6921 was funded by Metal Craft, Inc., funds which [are] his separate property. In addition, Wife's name was only on the account 6921 for (19) days before she removed said monies. However, further analysis is not required under this statute in light of the Court's FINDING that the $641,900 removed by Wife from account 6921 was Husband's separate property.

Given this, Husband acknowledged the existence of West Virginia Code § 48-7-103(1)(B), but he did not articulate an argument that this statute applied or that the court should apply it in the case. Therefore, Husband did not raise a "secondary argument" in his post-hearing submission below.[8]

Husband now argues on appeal that if this Court concludes that the family court did not err in finding that he failed to meet his burden of rebutting the presumption that he gifted the funds in account 6921 to the marriage, which this Court has done, then the family court erred by "rejecting" his secondary argument—that he rebutted the presumption of an equal division of the funds in account 6921 because those funds were derived from Metal Craft, Inc., his separate property, pursuant to West Virginia Code § 48-7-103(1)(B). Yet Husband did not raise that argument below, either during the final hearing or in his memorandum order.[9]

---

[8] Additionally, Husband did not file a motion to reconsider pursuant to Rule 25 of the Rules of Practice and Procedure for Family Court and West Virginia Code § 51-2A-10 to bring to the family court's attention his belief that the family court erred by not exercising its discretionary authority to alter distribution of the marital estate pursuant to West Virginia Code § 48-7-103(1)(B). While a motion for reconsideration is not necessary to preserve an issue for appellate review, such a motion would have clearly provided the family court notice that Husband sought such a determination.

[9] West Virginia Code § 48-7-103 requires family courts to "presume that all marital property is to be divided equally between the parties," but it grants family courts discretion to alter that presumed equal distribution after considering factors including, "the extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited

Lastly, the majority's reliance on *Stuck v. Stuck,* 218 W. Va. 605, 625 S.E.2d 367 (2005) is misplaced. In *Stuck*, the family court failed to complete the third step of equitable distribution by refusing to rule on the equitable distribution of the parties' residential property. That order stated, in part, "[t]his court, under the circumstances and controlling law stated, does specially not rule on the equitable aspects of the transfer," but concluded "the residential real estate is owned by the parties as joint tenants." The SCAWV found this order inadequate because the family court refused to issue a ruling dividing an asset, the third step of equitable distribution. The SCAWV further found that the family court's order was neither detailed nor specific enough to meet the requirement that "the court shall set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner it adopted." *See* W. Va. Code § 48-7-106 (2001); Syl. Pt. 5, *Burnside v. Burnside,* 194 W. Va. 263, 460 S.E.2d 264 (1995).

The order on appeal demonstrates that the family court considered the evidence presented at the three-day final hearing and the parties' post-hearing submissions, then made detailed, specific findings of fact and conclusions of law addressing each of the three steps of equitable distribution and explained its reasoning for dividing the property as it did. Notably, this order reflects that the court assessed the parties' credibility which was a factor in its decision. As stated in the order, the family court classified the parties' property as either marital or separate, valued the marital assets, and divided the marital estate between the parties pursuant to West Virginia Code § 48-7-103. Accordingly, this Court should not disturb the order of the family court.

For these reasons, I respectfully concur, in part, and dissent, in part.

---

to . . . funds which are separate property." W. Va. Code § 48-7-103(1)(B). Accordingly, even if Husband had properly raised this argument before the family court, West Virginia Code § 48-7-103 does not require the family court to alter the distribution. Given the family court's thorough analysis of the issues in this case and Husband's failure to succinctly notify the family court that he was requesting the family court to perform such an analysis, it is my opinion, that the family court's failure to specifically state in the final order that it was not exercising its discretion to alter the distribution presumed by law, is harmless error, at best.